[No. B147464. Second Dist., Div. Three. July 24, 2001.]

20TH CENTURY INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LINDA P. AHLES, Real Party in Interest.

**COUNSEL**

Horvitz & Levy, Lisa J. Perrochet, David S. Ettinger; Even, Crandall, Wade, Lowe & Gates, James L. Crandall and Michael J. McGuire for Petitioner.

No appearance for Respondent.

Dale E. Washington for Real Party in Interest.

Shernoff, Bidart & Darras, William M. Shernoff, Michael J. Bidart and Jeffrey Isaac Ehrlich for Consumer Attorneys of California, United Policyholders, Consumer Federation of California, Congress of California Seniors, Foundation for Taxpayer and Consumer Rights, and California Public Interest Research Group as Amici Curiae on behalf of Real Party in Interest.

Quisenberry & Kabateck, Brian S. Kabateck, Suzanne Havens Beckman and Heather M. Mason for Consumer Attorneys of California, United Policyholders, Consumer Federation of California, Congress of California Seniors, Foundation for Taxpayer and Consumer Rights, and California Public Interest Research Group as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**CROSKEY, J.**—The petitioner, 20th Century Insurance Company, seeks a writ of mandate directing the trial court to vacate and set aside an order granting the motion of the real party in interest, Linda P. Ahles, to reconsider an earlier order sustaining a demurrer to Ahles's complaint without leave to amend.[1]

Ahles had filed a complaint against 20th Century for breach of a contract of insurance, tortious breach of the implied covenant of good faith and fair dealing (bad faith) and fraud. The trial court's ruling, which allowed her to go forward with her action and required 20th Century to file an answer, was based on the Legislature's enactment of Code of Civil Procedure section 340.9 (hereafter section 340.9).[2] This new statute, which became effective on January 1, 2001, revives, subject to certain conditions and limitations,

---

[1] Following the trial court's order sustaining the demurrer, a judgment of dismissal was signed and filed on October 3, 2000. As we explain below, we elect to treat Ahles's motion to reconsider the order sustaining the demurrer as a motion for a new trial.

[2] Code of Civil Procedure, section 340.9 provides:

"(a) Notwithstanding any other provision of law or contract, any insurance claim for damages arising out of the Northridge earthquake of 1994 which is barred as of the effective date of this section solely because the applicable statute of limitations has or had expired is hereby revived and a cause of action thereon may be commenced provided that the action is commenced within one year of the effective date of this section. This subdivision shall only apply to cases in which an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential Northridge earthquake damage.

"(b) Any action pursuant to this section commenced prior to, or within one year from, the effective date of this section shall not be barred based upon this limitations period.

insurance claims *"arising out of* the Northridge earthquake of 1994" that previously had been barred by "the applicable *statute* of limitations." (Italics added.)

The trial court's application of section 340.9 to restore legal vitality to Ahles's complaint raises a number of important questions which we must address. After a review of this record, the legislative history of section 340.9, including the significant public policies it seeks to serve, and the relevant case law, we are persuaded that the new statute (1) does not impermissibly impair 20th Century's right of contract or deny it substantive due process by the destruction of vested contract rights, (2) embraces and applies to the 12-month "contractual" limitations period included in 20th Century's policy as mandated by Insurance Code section 2071, (3) applies to all cases "pending" on the date the statute became effective, and (4) extends to Ahles's tort claim for bad faith, as well as her breach of contract cause of action.[3] In view of these conclusions, we will affirm the trial court's order of December 5, 2000, and deny 20th Century's writ petition.

FACTUAL AND PROCEDURAL BACKGROUND[4]

On January 17, 1994, Ahles was the owner of the residential property at 10727 Garfield Avenue in Culver City, California. She had a homeowners insurance policy issued by 20th Century (policy No. H07066432) which included, by endorsement, coverage for loss and damage caused by earthquake. The policy covered her home and other structures on the property. On January 17, a large earthquake, commonly known as the Northridge earthquake, struck Southern California and caused extensive damage.

On or about May 1, 1994, Ahles reported to 20th Century that she had observed damage to her property which she believed was attributable to the Northridge earthquake. Three weeks later, 20th Century sent an adjuster to

"(c) Nothing in this section shall be construed to alter the applicable limitations period of an action that is not time barred as of the effective date of this section.

"(d) This section shall not apply to either of the following:

"(1) Any claim that has been litigated to finality in any court of competent jurisdiction prior to the effective date of this section.

"(2) Any written compromised settlement agreement which has been made between an insurer its insured where the insured was represented by counsel admitted to the practice of law in California at the time of the settlement, and who signed the agreement."

[3] As we explain below, it does *not* extend to Ahles's fraud cause of action.

[4] As 20th Century's challenge to Ahles's complaint was by demurrer, the facts we recite are taken from her second amended complaint, which we necessarily must accept as true. (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 579 [94 Cal.Rptr.2d 3, 995 P.2d 139].) Her second amended complaint is the operative pleading before us. The procedural matters reflected in the appellate record are not in dispute.

inspect the property and evaluate the damage. In July, 20th Century sent an engineer to further inspect the property, including Ahles's attic and the crawl space underneath her home. Based on those inspections, 20th Century determined the amount of damage to Ahles's home was less than the amount of her $11,100 deductible. It therefore made no payment to her for that damage.[5]

Approximately four years later, on August 27, 1998, Ahles had her home inspected for termites. According to Ahles's allegations, the termite inspector observed earthquake damage in the crawl space under her house. On or about September 15, 1998, she filed a supplemental claim for earthquake damage with 20th Century. In that claim, Ahles asserted that her home had sustained earthquake damage that had neither been discovered nor considered during 20th Century's adjustment of her original claim. Almost one year later, on July 15, 1999, 20th Century sent an adjuster to inspect Ahles's home and to investigate her new claim. The adjuster concluded that the damage claimed by Ahles was not caused by the earthquake. On that ground, and because Ahles had submitted her supplemental claim more than four years after the earthquake and the adjustment on her initial claim, 20th Century denied it. Ahles responded to this denial on August 26, 1999, by filing a complaint against 20th Century, alleging breach of contract and breach of the implied covenant of good faith and fair dealing.

20th Century then sent engineers to inspect Ahles's house on October 26, 1999. The engineer's report apparently acknowledged that Ahles's home had sustained considerable damage, but blamed it on causes other than the earthquake. The report, however, also noted that the initial engineer's report had been incomplete in that it had failed to identify damage to the foundation and stucco, as well as other "non-earthquake" problems.

At proceedings held on March 23, 2000, the trial court sustained 20th Century's demurrer, but granted Ahles leave to amend her complaint. She did so, and added as an allegation in her first amended complaint a cause of action for fraud. When 20th Century again successfully demurred, Ahles was once more granted leave to amend.

After Ahles filed her second amended complaint on July 17, 2000, 20th Century again demurred. As one ground, 20th Century argued that Ahles's "entire action [was] barred by the one-year statute of limitations contained in the insurance policy." 20th Century's policy issued to Ahles contained a

---

[5]The deductible which pertained to the other structures on her property, however, was a lesser amount ($1,110) and, since the damage to those structures exceeded that amount, 20th Century did pay Ahles $5,030.11 under the policy.

provision stating that "[n]o action shall be brought unless there has been compliance with the policy provisions and *the action is started within one year after the occurrence causing the loss or damage*." (Italics added.) 20th Century contended, pursuant to this clause, that Ahles had only one year from denial of her 1994 claim to file suit. Her entire action was therefore untimely.

In response, Ahles asserted that in 1994 she was assured by three different 20th Century representatives that there had been no structural damage to her home and that if she discovered damage which exceeded her deductible, she could reopen her claim.[6] Ahles argued she reasonably relied on these representations and, in 1998, when the termite inspector informed her of the damage under her house, Ahles believed she could make a claim. Ahles further alleged that "20th Century's claims handling practices were improper, so much so that the Department of Insurance audit . . . found 75% of the Northridge earthquake claims were mishandled." Finally, Ahles alleged 20th Century had been guilty of bad faith and fraud in that it knowingly "lowball[ed]," mishandled and improperly denied hers and numerous other claims pertaining to the Northridge earthquake. Under these circumstances, she contended, 20th Century waived and was estopped from asserting the one-year statute of limitations.[7]

---

[6]On August 17, 1994, approximately three months after Ahles filed her claim, 20th Century sent her a letter explaining that the damage to her home did not exceed her $11,100 deductible and therefore nothing was due on that part of her claim. The letter, however, also stated: "If you discover that your damages exceed the relevant deductible(s), please advise us and we will reconsider your claim." The letter did *not* contain or suggest an expiration date.

In addition, Ahles alleges that, "20th Century also made general announcements which encouraged insureds to not deluge them with claims. On or about the end of January 1994, defendant 20th Century widely disseminated a letter to its insureds and the general populace regarding common questions asked concerning earthquake coverage. This letter indicated that if damage to an insured's property appeared cosmetic only but was later discovered to be more severe that 20th Century should be called only at that time. The letter further indicated that anytime additional damage was discovered that 20th Century should be contacted and the claim would be reopened to see if a supplemental damage payment [was] warranted. The letter further indicated that 20th Century would pay for inspections to make certain the property was safe to live in. Finally, concerning 'formalizing' a claim the letter indicated that 20th Century would let its insureds know anything that was needed, but they wanted to keep the process as simple as possible." (The record, however, does not contain a copy of this letter.)

[7]These allegations raise another issue which we do not have to reach in light of our focus on the impact of Code of Civil Procedure section 340.9: "Where an insured presents a timely claim to his insurer for property damage under a policy, and the insurer's agent inspects the property but does not discover the full extent of covered damage, does California Insurance Code § 2071 [and its one-year limitations period used in all relevant insurance contracts, including 20th Century's,] bar a claim brought by the insured more than one year after the damage was sustained but within one year of his [or her] discovery of the additional damage?" (*Vu v. Prudential Property & Cas. Ins. Co.* (9th Cir. 1999) 172 F.3d 725, 727

At the hearing held on September 29, 2000, following which the trial court sustained 20th Century's demurrer to her second amended complaint without leave to amend, Ahles asked the court to take judicial notice of Senate Bill No. 1899 (1999-2000 Reg. Sess.), a bill which had been passed by the California Legislature and was then awaiting the Governor's signature. The bill had been drafted to add section 340.9 to the Code of Civil Procedure. (See fn. 2, *ante*.)

The trial court, recognizing that the Governor had not yet signed the bill, indicated the case was therefore controlled by the one-year limitations period in the insurance contract. Ahles had timely filed her 1994 claim and, although she argued her claim of delayed discovery of further earthquake damage was excusable, the court indicated that it was "not persuaded that the delay was justified." The trial court held that Ahles's complaint was time-barred and sustained 20th Century's demurrer without leave to amend. In concluding the proceedings, however, the trial court stated, "And of course, . . . if the Governor signs a bill that is enacted into law, that is a ground for reconsideration under 1008 of the Code of Civil Procedure."[8]

According to 20th Century, it served notice of the trial court's ruling sustaining its demurrer without leave to amend and entering a judgment of dismissal on October 3, 2000. Ahles, however, asserts 20th Century never served her with a signed, file-stamped copy of the dismissal. The only copies received by Ahles were "blank."[9]

On November 28, 2000, 56 days after the judgment of dismissal, Ahles made an ex parte application for a special setting of a motion for reconsideration of the trial court's October 3, 2000, ruling and "to vacate" that decision. Ahles indicated that "unknown to . . . counsel and the court, the law [Senate Bill No. 1899] had . . . been signed into law on September 30,

[certifying this issue to the California Supreme Court; such certification was accepted and the issue is now pending before that court (No. S078271)].)

[8]The following day, September 30, 2000, the Governor signed Senate Bill No. 1899 into law. It became effective on January 1, 2001.

[9]In its petition, 20th Century acknowledges that "it is possible that what was served was only the proposed judgment before it was signed and filed." In view of that concession, and in view of the trial court's implied finding (by virtue of its subsequent ruling) that such service had not been made, we conclude that 20th Century did not serve a completed copy of the judgment of dismissal dated October 3, 2000, until December 29, 2000. In its petition, 20th Century states that it served on Ahles a signed and file-stamped copy of the October 3, 2000 judgment of dismissal of Ahles's second amended complaint on December 29, 2000. The exhibit provided by 20th Century includes a "Notice of Entry of Judgment of Dismissal" bearing a January 2, 2001 superior court file stamp. In its petition, 20th Century indicates the copy of the dismissal was provided "as a precaution in the event a file-stamped copy of the judgment had not earlier been served."

2000." Ahles brought the motion for reconsideration and to vacate judgment "based upon [the] new law."

On December 5, 2000, following a hearing, the trial court granted Ahles's motion for reconsideration pursuant to the provisions of Code of Civil Procedure, section 1008, subdivision (c).[10] When 20th Century argued that Senate Bill No. 1899 would not be in effect until January of 2001, the court stated, "I'll put it over to January . . . , conditionally granting the motion and overruling the demurrer on the statute of limitations ground, unless prior to January . . . 2001, that law is in some way effectively altered by way of amendment, . . . or whatever other statutory or constitutional[] event may occur to nullify that law." The court set dates for hearings, a status conference and trial. Before the end of the hearing, counsel for 20th Century stated, "A point of clarification, your honor. As I understand, the court's ruling is reviving the second amended complaint *in total*. . . ." (Italics added.) The trial court responded, "Yes."

20th Century's response to this ruling was to file the within petition seeking writ relief. It argues (both in its petition and in a subsequent brief filed in response to amicus briefing) that the trial court had no jurisdiction to grant reconsideration because (1) Ahles's application was not timely, (2) a judgment had been entered and (3) the time for appeal therefrom had expired. 20th Century also contends that the trial court's basis for granting relief to Ahles was flawed in that Senate Bill No. 1899 (§ 340.9) (1) did not become law until *after* the trial court had ruled and thus could not serve as a basis for the court's ruling, (2) did not apply since Ahles's claim had already been "litigated to finality," (3) is unconstitutional as an impermissible impairment of contract and constitutes destruction of "vested" contract rights in violation of the due process clause and, in any event, (4) does not apply to *tort* claims asserted by an insured.

On February 28, 2001, we stayed all further proceedings in the trial court, issued an order to show cause and set the matter on calendar.

### DISCUSSION

Before turning to the critical questions concerning the proper construction, application and constitutional vitality of section 340.9, we must first address 20th Century's jurisdictional arguments.

---

[10]Code of Civil Procedure, section 1008, subdivision (c), provides: "If a court at any time determines that there has been a change of law that warrants it to reconsider a prior order it entered, it may do so on its own motion and enter a different order."

1. *The Trial Court Had Jurisdiction to Consider and Rule upon Ahles's Motion to Reconsider and to Vacate the Court's Order of September 29, 2000, and the Judgment of October 3, 2000*

 a. *Trial Court's Grant of Reconsideration After Entry of Judgment*

■ 20th Century first argues the trial court had no jurisdiction to grant Ahles's motion for reconsideration because judgment had been entered in the matter on October 3, 2000. 20th Century contends that, once a final judgment has been entered, a motion for reconsideration may not be entertained. In making this argument, 20th Century relies on the court's decision in *APRI Ins. v. Superior Court* (1999) 76 Cal.App.4th 176 [90 Cal.Rptr.2d 171]. In *APRI*, the trial court signed an order granting a motion to quash and dismissing APRI from the action. It then granted a motion for reconsideration of the ruling on the motion to quash. APRI contended this was error and the appellate court agreed. The matter had been dismissed within the meaning of Code of Civil Procedure section 581d.[11] Once the dismissal was entered, the trial court had no jurisdiction to reconsider the motion to quash. The *APRI* court stated, "The trial court failed to observe the critical distinction between an order of dismissal, which is a judgment, and other orders. 'A court may reconsider its order granting or denying a motion and may even reconsider or alter its judgment so long as judgment has not yet been entered. Once judgment has been entered, however, the trial court may not reconsider it and loses its unrestricted power to change the judgment. It may correct judicial error only through certain limited procedures such as motions for new trial and motions to vacate the judgment. [Citations.]' " (76 Cal.App.4th at p. 181.) Here, 20th Century has provided a copy of a judgment of dismissal bearing an October 3, 2000 superior court file stamp and the trial judge's signature.[12] Since it appears a final (i.e., appealable) judgment had been entered, we conclude the trial court could not grant Ahles's motion for reconsideration.

The trial court, however, could have properly granted a motion for a new trial and, under certain circumstances, a motion to reconsider may be construed as one for a new trial. In *Passavanti v. Williams* (1990) 225 Cal.App.3d 1602 [275 Cal.Rptr. 887], the appellant argued that his motion

---

[11]Code of Civil Procedure section 581d provides: "A written dismissal of an action shall be entered in the clerk's register and is effective for all purposes when so entered. [¶] All dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and those orders when so filed shall constitute judgments and be effective for all purposes, and the clerk shall note those judgments in the register of actions in the case."

[12]20th Century has not provided a copy of the Civil Register Report for the case indicating the judgment of dismissal was entered.

for reconsideration should have been construed as a motion for a new trial or to vacate the judgment for purposes of determining when the time to file a notice of appeal had begun to run. The appellate court determined it was "compelled to treat the motion for reconsideration as a motion for new trial" because two of its prior decisions had indicated such a procedure was appropriate. (*Id.* at p. 1610.) The court stated, "Because of those decisions, we believe that good cause exists and fairness requires us to construe plaintiff's motion for reconsideration in this case to be a motion for new trial or a motion to vacate the judgment . . . ." (*Ibid.*) Although the *Passavanti* court indicated that, absent a showing of "extremely good cause," it was "disinclined to engage in the practice of 'construing' motions and [would] hold counsel to the label they attach to their motions," it concluded such good cause had been shown. (*Ibid.*)

In the present case, Ahles designated her motion as one for "reconsideration and to *vacate* the decision of 10/3/00." (Italics added.) ■ However, as 20th Century has pointed out, a motion to vacate a judgment pursuant to Code of Civil Procedure section 663 " '. . . does not contemplate merely the setting aside of the judgment, as does a motion for new trial or a motion for relief from default under C.C.P. 473. It expressly provides for *vacating the judgment and entering of another judgment.* Hence an order of vacation, without directing entry of a new judgment, is void.' " (*Ramirez v. Moran* (1988) 201 Cal.App.3d 431, 435 [247 Cal.Rptr. 117], original italics.) ■ Here, the trial court granted Ahles's motion, but failed to enter a new judgment. Moreover, under the circumstances presented, it would have been inappropriate to do so.

Although Ahles labeled her motion as one for reconsideration or to vacate the trial court's judgment of October 3, 2000, Ahles's purpose in making the motion was to restore the action to the trial court's calendar. In essence, Ahles made a motion for a new trial pursuant to Code of Civil Procedure, section 657. Under that section, a "verdict may be vacated and *any other decision may be modified or vacated,* in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party: [¶] . . . [¶] 7. Error in law, occurring at the trial and excepted to by the party making the application." (Italics added.) Here, it is arguable the trial court's decision (or entry of judgment) was based on an incorrect or erroneous understanding of the law; the court apparently believed it had the right to reconsider its October 3d ruling granting 20th Century's demurrer without leave to amend. In addition, the trial court could arguably have relied on the pendency of Senate Bill No. 1899 to at least continue the matter until the statute became effective. (See § 340.9, subd. (b).)

We note that Ahles may properly bring a motion for new trial from a judgment of dismissal resulting from the sustaining of a demurrer. (*Carney v. Simmonds* (1957) 49 Cal.2d 84, 88, 90-91 [315 P.2d 305]; see *Finnie v. District No. 1 - Pacific Coast Dist. etc. Assn.* (1992) 9 Cal.App.4th 1311, 1315-1316 [12 Cal.Rptr.2d 348].) Further, when treated as a motion for new trial, Ahles's motion is timely.[13]

Although we are, as was the court in *Passavanti,* generally disinclined to construe a motion as other than that which it has been labeled, "extremely good cause" exists for treating Ahles's motion as one for a new trial. (*Passavanti v. Williams, supra,* 225 Cal.App.3d at p. 1610.) At the proceedings held on September 29, 2000, after the trial court determined Ahles complaint was time-barred, it specifically stated that, should the Governor sign Senate Bill No. 1899, "that [would be] a ground for reconsideration under 1008 of the Code of Civil Procedure." Notions of fairness indicate Ahles should be allowed to pursue her claim in view of the trial court's attitude and comments regarding the case; the trial court *invited* Ahles to make a motion for reconsideration if and when the Governor signed Senate Bill No. 1899. This invitation indicates the trial court considered its ruling to be subject to later modification. (Cf. *APRI Ins. v. Superior Court, supra,* 76 Cal.App.4th at p. 185 [nothing in the record indicated the trial court's dismissal entered in favor of APRI was intended to be *without* prejudice].)

Finally, had the trial court neither invited nor granted Ahles's motion, it is clear from the record before us that Ahles's would have filed a notice of appeal from the October 3, 2000 judgment. Had she done so, we would have had to consider, given the retroactive provisions of Code of Civil Procedure section 340.9, subdivision (b) (see fn. 2, *ante*), the present questions by way of appeal. Instead, since the trial court's order necessarily precluded the filing of a notice of appeal, we may properly consider the issues raised by way of 20th Century's petition for a writ. The result of this case, however, will be no different simply because we review the matter on a writ rather than on appeal.

---

[13]Code of Civil Procedure, section 659 provides in relevant part: "The party intending to move for a new trial must file with the clerk and serve upon each adverse party a notice of his intention to move for a new trial, designating the grounds upon which the motion will be made and whether the same will be made upon affidavits or the minutes of the court or both, either [¶] 1. Before the entry of judgment; or [¶] 2. Within 15 days of the date of mailing notice of entry of judgment by the clerk of the court . . . , or service upon him by any party of written notice of entry of judgment, or within 180 days after the entry of judgment . . . . [¶] Said notice of intention to move for a new trial shall be deemed to be a motion for a new trial on all the grounds stated in the notice." Here, there is no evidence notice of entry of the judgement was given by the court clerk, and 20th Century has failed to show it served on Ahles a file-stamped copy of the October 3, 2000, judgment prior to December 29, 2000. Accordingly, Ahles's motion (or notice of motion), filed on November 28, 2000, was well within the 180-day time limit.

### b. *California Rules of Court, rule 2(a)*

20th Century next argues that, if notice of the judgment was served on October 3, 2000, then December 4 was the last day to file a notice of appeal and the last day the trial court had jurisdiction to grant any motion Ahles might have brought. "[W]hen a judgment becomes final by lapse of the time for appeal, the court [generally] has no further jurisdiction of the subject matter . . . ." (*Mason & Associates, Inc. v. Guarantee Sav. & Loan Assn.* (1969) 269 Cal.App.2d 132, 133 [74 Cal.Rptr. 669].) Accordingly, 20th Century argues, pursuant to California Rules of Court, rule 2(a), that the trial court lacked jurisdiction to hear the motion on December 5, 2000.

California Rules of Court, rule 2(a) provides in relevant part: "Except as otherwise provided by Code of Civil Procedure section 870 or other statute or rule 3, a notice of appeal from a judgment shall be filed on or before the earliest of the following dates: (1) 60 days after the date of mailing by the clerk of the court of a document entitled 'notice of entry' of judgment; (2) 60 days after the date of service of a document entitled 'notice of entry' of judgment by any party upon the party filing the notice of appeal, or by the party filing the notice of appeal; or (3) *180 days after the date of entry of the judgment.*" (Italics added.)

As we have already noted (see fn. 9, *ante*), 20th Century has failed to establish that it served on Ahles a copy of the notice of entry of judgment before December 29, 2000, and there is no evidence in the exhibits to indicate the clerk mailed a copy of the notice of entry of judgment. Under these circumstances, the trial court had jurisdiction to consider Ahles's motion up to 180 days after October 3, 2000.[14]

### 2. *Section 340.9 Justified the Trial Court's Order*

### a. *The Legislature's Power to Revive Barred Claims*

■ We begin our consideration of 20th Century's attack on section 340.9 by recognizing a well established principle of law. The Legislature is constitutionally free to revive a civil cause of action that has become time-barred under a former statute of limitations. (*Campbell v. Holt* (1885) 115 U.S. 620, 629-630 [6 S.Ct. 209, 214, 29 L.Ed. 483] [a law removing the bar of a statutory limitations defense *after* it has· been perfected is not unconstitutional]; see also *Chase Securities Corp. v. Donaldson* (1945) 325

---

[14]20th Century's final procedural argument, based on the contention that Ahles's motion for consideration was not timely under Code of Civil Procedure section 1008, subdivision (a), is moot in light of our determination to treat her motion as one for a new trial.

U.S. 304, 315 [65 S.Ct. 1137, 1143-1143, 89 L.Ed. 1628] [reaffirming *Campbell v. Holt*].)[15]

This is also the rule in California. "[T]he Legislature has the power to expressly revive time-barred civil common law causes of action." (*Liebig v. Superior Court* (1989) 209 Cal.App.3d 828, 835 [257 Cal.Rptr. 574] (*Liebig*) [rejecting a challenge to Code Civ. Proc., § 340.1, which expressly revived time-barred tort claims of victims of sexual molestation]; see also *Tietge v. Western Province of the Servites, Inc.* (1997) 55 Cal.App.4th 382, 386 [64 Cal.Rptr.2d 53] (*Tietge*) ["[W]e find no constitutional impediment to the revival of a personal cause of action . . . ."]; *Lent v. Doe* (1995) 40 Cal.App.4th 1177, 1184 [47 Cal.Rptr.2d 389] (*Lent*) [rejecting the contention that *Liebig* was decided incorrectly and should not be followed].)[16]

In *People v. Frazer* (1999) 21 Cal.4th 737 [88 Cal.Rptr.2d 312, 982 P.2d 180], the Supreme Court signaled its adoption of the reasoning in *Chase Securities Corp. v. Donaldson, supra,* 325 U.S. 304. In a case which rejected a due process challenge to a statute that retroactively extended the criminal statute of limitations for certain sex crimes, the *Frazer* court stated: "The holding of *Chase*—that no constitutionally protected interest arises once a statute of limitations has run, and that such protection can be retroactively withdrawn consistent with due process—has been reaffirmed by the high court in subsequent cases. (See *Plaut* v. *Spendthrift Farm, Inc.* (1995) 514 U.S. 211, 229 [115 S.Ct. 1447, 1458, 131 L.Ed.2d 328] [noting that statutes of limitation 'can be extended, without violating the Due Process Clause, after the cause of the action arose and even after the statute itself has expired']; *Electrical Workers* v. *Robbins & Myers, Inc.* (1976) 429 U.S. 229, 243 [97 S.Ct. 441, 450, 50 L.Ed.2d 427] [rejecting the claim that 'Congress was without constitutional power to revive, by enactment, an action which, when filed, is already barred by the running of a limitations period']." (*People v. Frazer, supra,* 21 Cal.4th at pp. 768-769.)

Given this history, it is clear that the decisions in *Liebig, Tietge* and *Lent* represent current California law on this issue. It is also clear that it is the

---

[15]In *Chase*, the Supreme Court rejected a constitutional challenge to an amendment to the Minnesota Blue Sky laws that operated to abolish the defendant's statute of limitations defense in pending litigation. Justice Jackson, writing for a unanimous court, acknowledged that when the litigation against it was commenced, the defendant had a legitimate expectation that it could defend the claim by invoking the relevant statute of limitations, and that this expectation had been disappointed by the change in the law. This disappointment, however, did not rise to the level of a constitutional violation because "[w]hatever grievance appellant may have at the change of policy to its disadvantage, it had acquired no immunity from this suit that has become a federal constitutional right." (*Chase Securities Corp. v. Donaldson, supra,* 325 U.S. at p. 316 [65 S.Ct. at p. 1142].)

[16]The Supreme Court denied review of *Liebig, Teitge* and *Lent.*

Legislature, not the courts, which is the proper forum for resolving the competing policy interests involved in the decision to revive a time-barred claim. (*Tietge, supra,* 55 Cal.App.4th at p. 388; *Lent, supra,* 40 Cal.App.4th at pp. 1186-1187.)[17]

 b. *Public Policy Considerations in the Enactment of Code of Civil Procedure Section 340.9*

In the instance of section 340.9, the Legislature has chosen to extend the limitations period available to insureds to file a lawsuit "[*n*]*otwithstanding any other provision of law or contract,* [for] any insurance claim for damages *arising out of* the Northridge earthquake of 1994." (Italics added.) Claims as to which the applicable statute of limitations had expired were revived for a one-year period commencing on the effective date of the statute. "Any action pursuant to this section commenced *prior to,* or within one year from, the effective date of this section shall not be barred based upon [the expired] limitations period." (§ 340.9, subd. (b).)

This statute is subject to three limitations: (1) the insured must have contacted the insurer or its representative about "potential Northridge earthquake damage" prior to January 1, 2000 (§ 340.9, subd. (a)); (2) the statute will *not* apply to claims which have been "litigated to finality" in "any court of competent jurisdiction" (§ 340.9, subd. (d)(1)); and (3) the statute will not apply to any claim which has been resolved by a *written* settlement agreement, provided the insured was represented by an attorney admitted to practice in California at the time of the settlement and said attorney "*signed the agreement.*" (§ 340.9, subd. (d)(2), italics added.)

 (1) *Public Policy Considerations*

It is important to our later discussion of the constitutional issues raised by 20th Century to recognize and appreciate the serious public policy considerations that were involved in the enactment of section 340.9. ▮ "Whenever a state determines, in good faith, that a practice of an industry is injurious to the public, the state may control the practice even where the legislation directly affects the internal affairs of a business or industry, as long as the legislation is neither arbitrary nor discriminatory."

---

[17]This may be, at least in part, the reason for the Supreme Court's rejection, on November 29, 2000, of a petition filed by an insurance industry coalition to enjoin the operation of section 340.9 and its then-pending effective date of January 1, 2001. The court was apparently not persuaded by the argument that the revival of claims of an insured who had actually settled with an insurer prior to January 1, 2001, but where the settlement agreement had *not* been signed by the insured's counsel (see Code Civ. Proc., § 340.9, subd. (d)(2)), would impermissibly reopen settled matters.

*(Cal. State Auto. etc. Bureau v. Downey* (1950) 96 Cal.App.2d 876, 894 [216 P.2d 882].) The business of insurance *is* " 'clothed with a public interest,' and therefore subject 'to be controlled by the public for the common good.' " *(German Alliance Ins. Co. v. Lewis* (1914) 233 U.S. 389, 415 [34 S.Ct. 612, 620, 58 L.Ed. 1011].)[18] Especially in California, the insurance industry "is a highly regulated industry." *(Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 830 [258 Cal.Rptr. 161, 771 P.2d 1247].)[19]

The field of insurance so greatly affects the public interest that the industry is viewed as a "quasi-public" business, in which the special relationship between the insurers and insureds requires special considerations. " '*The insurers' obligations are . . . rooted in their status as purveyors of a vital service labeled quasi-public in nature.* Suppliers of services affected with a public interest must take the public's interest seriously, where necessary placing it before their interest in maximizing gains and limiting disbursements . . . [A]s a supplier of a public service rather than a manufactured product, the obligations of insurers go beyond meeting reasonable expectations of coverage. The obligations of good faith and fair dealing encompass qualities of decency and humanity inherent in the responsibilities of a fiduciary. Insurers hold themselves out as fiduciaries, and with the public's trust must go private responsibility consonant with that trust.' " *(Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 820 [169 Cal.Rptr. 691, 620 P.2d 141], italics added.)

[18]See also 15 United States Code section 1011 (McCarron-Ferguson Act), which declares *state* regulation of the business of insurance to be in the public interest.

[19]The California Legislature regulates almost every aspect of the business of insurance, such as which insurers are admitted to transact business (Ins. Code, § 700), how policies may be canceled or renewed (Ins. Code, §§ 675-679), the insurers' permissible investments (Ins. Code, §§ 1100-1107, 1152-1254), the rates the insurers may charge (Ins. Code, §§ 1861.01-1861.16), acts of the insured excluded from coverage under the policy (Ins. Code, § 533), the insurers' trade and claims adjustment practices (Ins. Code, §§ 790-790.15), incontestability clauses in life (Ins. Code, §§ 10113.5 and 10206) and disability (Ins. Code, § 10350.2) policies; disclosure requirements for binding arbitration provisions in disability policies (Ins. Code, § 10123.19), and the actual provisions of the policy (see, e.g., Ins. Code, §§ 2070-2071, 11580-11589.5). Applicable statutes are deemed part of the policy even if not specifically mentioned in the insurance contract. *(Wildman v. Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 40 [307 P.2d 359].)

More specifically, the Legislature has enacted many statutes, the sole purpose of which is to provide various types of relief to Northridge earthquake victims. See, for example, Insurance Code section 10089.70 (directing Department of Insurance to establish a program for the mediation of disputes between insureds and their insurers arising out of the Northridge earthquake, and any later earthquakes); Revenue and Taxation Code section 19132.5, subdivision (a) (exempting victims of Northridge earthquake from certain tax penalties); Revenue and Tax Code section 69, subdivision (a) (allowing a longer period for transfer of base-year value to comparable property for victims of Northridge earthquake than victims of other disasters); Education Code section 67359.20 (appropriating $75 million in bond funds for repair and replacement of buildings for the University of California, the California State University, and California Community Colleges arising out of Northridge earthquake).

■ The *Egan* court recognized that the unequal relationship between the insured and insurers demanded special remedies for breach of that public trust, such as tort remedies for the failure to perform obligations promised in a policy and punitive damages. The court explained: "[T]he relationship of insurer and insured is inherently unbalanced; the adhesive nature of insurance contracts places the insurer in a superior bargaining position. The availability of punitive damages is thus compatible with recognition of insurers' underlying public obligations and reflects an attempt to restore balance in the contractual relationship." (*Egan v. Mutual of Omaha Ins. Co., supra,* 24 Cal.3d at p. 820.)

The significant public interest in the special relationship between the insured and insurer justifies the availability of tort remedies, and distinguishes insurance contracts from other types of contracts. Tort remedies remain unavailable in noninsurance contract cases. (See, e.g., *Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 46 [86 Cal.Rptr.2d 855, 980 P.2d 407] [availability of tort remedies for breach of the covenant of good faith and fair dealing not extended to noninsurance contracts since "the insurance policy cases represent 'a major departure from traditional principles of contract law' "]; *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373] [tort remedies not permitted for breach of the implied covenant of good faith and fair dealing in employment contract cases].)

■ Similarly, the public's interest in protecting vulnerable insureds mandates that insurance contract interpretation, like insurance contract remedies, not be limited by the usual contract rules: "the rights and obligations of the insurer cannot be determined solely on the basis of rules pertaining to private contracts negotiated by individual parties of relatively equal bargaining strength." (*Barrera v. State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 669 [79 Cal.Rptr. 106, 456 P.2d 674].)[20] Rather, statutes pertaining to, and contractual provisions contained within, insurance policies must be construed in light of applicable public policy, promoting the protection of the insured and the public at large. (*Id.* at p. 672.) So too, statutes

---

[20]As the Supreme Court in *Foley v. Interactive Data Corp., supra,* 47 Cal.3d 654 observed: " '[J]ust as the law of contracts fails to provide adequate principles for construing the terms of an insurance policy, the substantial body of law uniquely applicable to insurance contracts is practically irrelevant to commercially oriented contracts. . . . These [unique] features characteristic of the insurance contract make it particularly susceptible to public policy considerations.' [Citation.]" (*Id.* at p. 690.) Although recent decisions of the Supreme Court have imposed some limitations upon the insured's preferred treatment in the interpretation and construction of insurance policies (see, e.g., *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264-1265 [10 Cal.Rptr.2d 538, 833 P.2d 545]; *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822-823 [274 Cal.Rptr. 820, 799 P.2d 1253]), such limitations do not alter the fundamental point that the law recognizes that the relationship between an insurer and a insured is both special and unique.

which affect existing insurance contracts, enacted to promote the public interest, are invariably upheld as a reasonable exercise of the state's police power. (See, e.g., *Carpenter v. Pacific Mut. Life Ins. Co.* (1937) 10 Cal.2d 307, 329 [74 P.2d 761]; *Hinckley v. Bechtel Corp.* (1974) 41 Cal.App.3d 206, 215 [116 Cal.Rptr. 33].) It is clear that the state's significant public policy concerns for the less powerful insureds, which bolster its power to regulate this "quasi-public" business of insurance, also prompted the enactment of section 340.9.

### (2) *Legislative History of Section 340.9*

As the legislative history of section 340.9 underscores, the Legislature enacted section 340.9 to promote an important public policy: "to bring needed relief to the victims of the Northridge earthquake." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1899 (1999-2000 Reg. Sess.) as amended May 23, 2000, p. 2.) The committee found compelling reports of rampant mishandling of insurance claims by insurers, and the unavailability of relief from the former administration of the Department of Insurance: "Proponents contend that there are strong public policy reasons to protect quake victims under the circumstances of this bill. They state that thousands of people who suffered damage to their homes did not receive the benefit of their insurance contracts because of the insurance companies' conduct. They further assert that ample evidence exists to show that insurers handling Northridge earthquake claims engaged in a systematic program of misleading consumers about the nature and extent of damage to their homes. Later, when it became clear that the problems were indeed significant, proponents assert that the insurers simply refused to pay claims on the basis that the claims had become time-barred." (*Id.* at p. 5.) "To compound problems, proponents note that when homeowners complained to the Department of Insurance to obtain relief, the department afforded no help. Thus, based on the circumstances surrounding the Northridge earthquake, proponents argue that there are sufficient public policy reasons to extend the statute of limitations and allow the homeowners to seek justice on their insurance claims." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1899 (1999-2000 Reg. Sess.) as amended May 23, 2000, p. 4.)[21] The Legislature also considered the opposition of the insurers, including arguments that the reopening of claims "that an insurer

---

[21]The legislative history of section 340.9 clearly supports the conclusion that the statute was passed to "bring needed relief to victims of the Northridge earthquake." The author of the bill states that "the one-year statute of limitations that is current law under Insurance Code section 2071 has barred victims from being fairly compensated for their losses . . . [because they] were misled about the extent of damage done as a result of the earthquake." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1899 (1999-2000 Reg. Sess.) as amended May 9, 2000, p. 3.) The legislative history continues, "News accounts have asserted that many of the

[had] legally denied from Northridge claimants through the introduction of retroactive legislation . . . raises serious constitutional questions" (Sen. Rules Com., Off. of Floor Analyses, 3d reading analysis of Sen. Bill No. 1899 (1999-2000 Reg. Sess.) as amended May 23, 2000, at p. 5), but after extensive analysis, determined these objections were without merit.[22]

### c. *Code of Civil Procedure Section 340.9 Is Constitutional*

#### (1) *There Is No Impermissible Impairment of Contract*

 20th Century asserts section 340.9 violates the contract clauses of both the United States and California Constitutions in that it "abrogates the contractual litigation deadline for Northridge earthquake victims prescribed in every California insurance policy" and "purports to invalidate the finality of certain agreements for settlement and release of Northridge earthquake claims . . . ."[23]

Both the United States and California Constitutions contain clauses prohibiting the Legislature from passing laws which impair the obligations in contracts. (See U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9.) Although the language of both contracts clauses is facially absolute, it has been determined that their "prohibition[s] must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.' " (*Energy Reserves Group v. Kansas Power & Light* (1983) 459 U.S. 400, 410 [103 S.Ct. 697, 704, 74 L.Ed.2d 569] (*Energy Reserves*).) Thus, impairment of an existing contract is not necessarily unconstitutional. "The States must possess broad power to adopt general regulatory

---

quake victims have yet to receive full and fair compensation from their insurance companies to cover the costs incurred as a result of the quake. Many victims . . . have received only partial settlements for their earthquake claims, and others have received no compensation at all, having been improperly told that the damage they suffered was below policy deductibles. In subsequent years, families have discovered damage that either was ignored or missed by the original claims adjuster, yet some insurers, according to . . . news accounts, have stonewalled claims, leaving homes, condominiums and apartment building in shambles and homeowners without any recourse." (Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 1899 (1999-2000 Reg. Sess.) as amended July 6, 2000, p. 2.) According to the statute's author, section 340.9 was intended to "provide these individuals who . . . were victimized twice, (once by the earthquake and a second time by their insurance companies) with a reasonable 'second chance' to seek redress for their damages." (*Id.* at p. 3.)

[22]See also Assembly Committee on Judiciary, Analysis of Senate Bill No. 1899 (1999-2000 Reg. Sess.) as amended May 23, 2000, pages 3-7, exhibit 1 to amici curiae's request for judicial notice. The Legislature's detailed consideration, and rejection, of the claimed constitutional objections to Code of Civil Procedure section 340.9, demands increased deference. Where "the statute represents a considered legislative judgment as to the appropriate reach of the constitutional provision . . . a focused legislative judgment on the question enjoys *significant weight and deference* by the courts." (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 180 [172 Cal.Rptr. 487, 624 P.2d 1215], italics added.)

[23]Although raised by 20th Century, the question of the impact of section 340.9 on the finality of settlement agreements is not directly at issue in this case.

measures without being concerned that private contracts will be impaired, or even destroyed, as a result." (*United States Trust Co. v. New Jersey* (1977) 431 U.S. 1, 22 [97 S.Ct. 1505, 1517, 52 L.Ed.2d 92].)

In *Energy Reserves, supra,* 459 U.S. 400 the court indicated that in determining whether legislation violates the contracts clause, three factors must be considered: (1) " 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship,' " (2) if the state law constitutes a substantial impairment of contract rights, does it nevertheless have a "significant and legitimate public purpose" such as "the remedying of a broad and general social or economic problem" and (3) if such a legitimate purpose is established, is "the adjustment of 'the rights and responsibilities of contracting parties [. . . based] upon reasonable conditions and . . . of a character appropriate to the public purpose justifying [the legislation's] adoption.' " (*Id.* at pp. 411-412 [103 S.Ct. at pp. 704-705.) The *Energy Reserves* court recognized that " '[a]s is customary in reviewing economic and social regulation, . . . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure.' " (*Id.* at pp. 412-413 [103 S.Ct. at p. 705].)

 ██ ██ In determining whether legislation amounts to a substantial impairment, one factor to be considered is "whether the industry the complaining party has entered has been regulated in the past." (*Energy Reserves, supra,* 459 U.S. at p. 411 [103 S.Ct. at p. 704].)[24] Whether the state actively regulates the industry at issue frames the parties' reasonable expectations and minimizes any potential statutory impairment.[25] (*Id.* at p. 416 [103 S.Ct. at p. 707].) ██ In California, the insurance business "is a highly regulated industry, and one in which further regulation can reasonably be anticipated." (*Calfarm Ins. Co. v. Deukmejian, supra,* 48 Cal.3d 805, 830; see fn. 19, *ante.*) The *Calfarm* court noted that by at least 1988, "insurers were well aware of the possibility that initiatives or ordinary legislation might be enacted that would affect existing policies." (*Calfarm Ins. Co.,* at p. 831.)

In light of its past extensive exercise of legislative power over the insurance industry to help victimized insureds, insurers should reasonably

---

[24]It is appropriate to rely on federal precedent in analyzing violations of both the California and United States contract clauses. This was the approach utilized in *Calfarm Ins. Co. v. Deukmejian, supra,* 48 Cal.3d 805, 827-829.

[25]For example, in *Energy Reserves,* the contested Kansas statute sought to regulate natural gas prices in existing contracts. The court observed Kansas already heavily regulated the industry, and rationalized that the industry should have reasonably expected its contracts were subject to alteration by state regulation. (*Energy Reserves, supra,* 459 U.S. at p. 416 [103 S.Ct. at p. 707].)

have expected the California Legislature to enact legislation designed to help insureds affected by the 1994 Northridge earthquake. The court in *Wolfe v. State Farm Fire & Casualty Ins. Co.* (1996) 46 Cal.App.4th 554 [53 Cal.Rptr.2d 878], acknowledged as much when it dismissed an individual's injunctive relief action against insurers based on their refusal to sell any new homeowners policies in order to avoid providing earthquake coverage, deferring to the Legislature's expressed intent to deal with problems arising from the 1994 earthquake "both now and in the future." (*Id.* at p. 568.) The Legislature's enactment of section 340.9 to correct insurers' wrongful processing of Northridge earthquake claims should have been reasonably expected, rendering the insurers' policies susceptible to alteration.

The revival of barred claims for one year fails to rise to the level of an impairment of a contract, because it merely affects the remedy for the violation of the contract, not the obligations contained within it. (See *Home Bldg. & L. Assn. v. Blaisdell* (1934) 290 U.S. 398, 445-448 [54 S.Ct. 231, 242-243, 78 L.Ed. 413, 88 A.L.R. 1481]; *Lincoln v. Superior Court* (1934) 2 Cal.2d 127, 129 [39 P.2d 405].) This is also true of section 340.9. It simply affects a remedy; it does not create or destroy any substantive rights.[26] As the United States Supreme Court opined in *Campbell v. Holt, supra,* 115 U.S. at page 628 [6 S.Ct. at page 213], the defense of the limitations bar is not a "vested right," and a statute which revived a *contractual right* to payment which had already lapsed did not violate the contract clause.

Similarly, application of section 340.9 to settlement agreements entered into without California counsel does not substantially impair such contracts. The statute on its face does not declare the agreements null or void; it simply revives barred claims so that they can be further addressed. Indeed, the statute's reference to settlement agreements serves only to describe one of the circumstances where section 340.9 will *not* apply. The ultimate viability of those settlement agreements is not "impaired." Moreover, even if section 340.9 could be said to "substantially impair" existing insurance contracts and settlement agreements, it may constitutionally do so to address a legitimate public purpose appropriately adjusted to the rights and responsibilities of the affected parties. (*Energy Reserves, supra,* 459 U.S. 400, 411-413 [103 S.Ct. 406, 704-705].)

For example, former Civil Code section 5124 (repealed effective Jan. 1, 1986) indisputably, yet legitimately, impaired final community property

---

[26]Simply because the provision is in the insurance policy, as required by Insurance Code section 2071, does not cloak the contract with inviolate rights. "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter." (*Hudson Water Co. v. McCarter* (1908) 209 U.S. 349, 357 [28 S.Ct. 529, 531, 52 L.Ed. 828].)

settlement agreements, judgments or decrees, to include a division of military retirement benefits. In *In re Marriage of Potter* (1986) 179 Cal.App.3d 73 [224 Cal.Rptr. 312], the court rejected due process and contract clause challenges to application of section 5124 to a final judgment previously stipulated to by the parties in light of "[t]he 'paramount interest' of this state in the equitable distribution of marital property upon dissolution of marriage." (179 Cal.App.3d at p. 84.)

In *In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371], the Supreme Court retroactively applied amended former Civil Code section 5118 to an existing interlocutory judgment.[27] That section changed the husband's earnings and accumulations while living apart from community property to separate property. Acknowledging the statute, as amended, impaired the wife's *vested* property rights, acquired prior to the date of the amendment, the Supreme Court nonetheless concluded that "this use of the police power to abrogate rights in marital property that derived from the patently unfair former law" justified the impairment. (16 Cal.3d at p. 594.)

Legitimate state interest also may change contract provisions. For example, the *Energy Reserves* court upheld a Kansas act, which regulated prices in already existing contracts, as a reasonable exercise of its police power to "protect consumers from the escalation of natural gas prices caused by deregulation," observing that "higher gas prices have caused and will cause hardship among those who use gas heat but must exist on limited fixed incomes." (*Energy Reserves, supra,* 459 U.S. at pp. 416-417 [703 S.Ct. at p. 707].) In California, the Supreme Court in *Calfarm* upheld provisions of Proposition 103, which altered the terms of existing insurance policies so as only to allow cancellation of those contracts on certain, specified conditions, in order to continue to make insurance " 'available' " to Californians and avoid a potential crisis. (*Calfarm Ins. v. Deukmejian, supra,* 48 Cal.3d at p. 831.)

The Legislature enacted section 340.9 to alleviate a broad and significant problem caused by the insurers' conduct; to help thousands of policyholders who were misled by the insurers into waiving their right to make claims in a timely manner. This purpose is backed by the power of the Legislature to protect California's citizens and provide for their general welfare and justifies any potential impairment of contract provisions. (See *Home Bldg. & L. Assn. v. Blaisdell, supra,* 290 U.S. at p. 444 [54 S.Ct. at p. 242] [statute extending time for redemption from mortgage foreclosure sales was held to constitute a legitimate and substantial legislative purpose].)

---

[27]Now Family Code section 771.

Finally, the revival of the statutory remedy is appropriately limited in time and application. Section 340.9 is only operative for the period of one year, and is limited to claims where the insurers had already been contacted prior to January 1, 2000, to claims not finally litigated, and to claims not settled through a California attorney. Special deference is granted to temporary statutes. (See *Home Bldg. & L. Assn. &. v. Blaisdell, supra,* 290 U.S. at p. 445 [54 S.Ct. at pp. 242-243].) When viewed with the proper legislative deference, this legislation does not impermissibly impair 20th Century's contract rights.

(2) *No "Vested Contract Rights" Are Destroyed in Violation of the Due Process Clause*

According to 20th Century, the retroactive application of section 340.9, subdivision (b), destroys its vested contractual right to repose following expiration of the contractual one-year limitations period. This argument, however, ignores what appears to be settled law. The "contractual" limitations period in 20th Century's policy is mandated by statute (Ins. Code, § 2071). It is therefore properly treated as a *statute* of limitations which does *not*, upon its expiration, endow in the defendant a "vested right." Insurance Code section 2071's mandated provisions are treated identically to statutes of limitations. (See *California Union Ins. Co. v. Poppy Ridge Partners* (1990) 224 Cal.App.3d 897, 903 [274 Cal.Rptr. 191].)[28] In *California Union,* the insurer failed to plead the one-year limitations period as an affirmative defense and argued that it was sufficient to claim that the insured had failed to satisfy the provisions of the contract. The court disagreed, explaining the insurer had "advanced no substantive, convincing reason for distinguishing [the contractual limitations period] from a statutory limitations period which is a personal privilege affecting the remedy only and waivable in advance, by contract, or by failure to plead it . . . . For some purposes contractual and statutory limitations periods have been treated similarly. [Citation.] [The court] conclude[d] the contractual limitations period should be treated the same as a statutory one, as an affirmative defense that must be pled as such or is waived." (*California Union Ins. Co., supra,* at p. 903; see also *Lawrence v. Western Mutual Ins. Co.* (1988) 204 Cal.App.3d 565, 573 [251 Cal.Rptr. 319] [the § 2071 contractual limitations period should "function no differently" than a legislatively enacted statute of limitations].)[29]

The running of a statute of limitations does not grant a defendant a *vested* right of repose. (See *Nelson v. Flintkote Co.* (1985) 172 Cal.App.3d 727, 733

---

[28]Technically, Insurance Code section 2071 mandates the one-year limitations period only in fire insurance policies. However, as the earthquake insurance provision was a part of Ahles's homeowners policy, which included fire insurance coverage, we see no legal significance to this technical point. (See also discussion on this issue in pt. d., *post.*)

[29]Moreover, the argument that the limitations period in insurance contracts constitutes an inviolate contractual provision, infused with the rights of other contract provisions, has been

[218 Cal.Rptr. 562].) The *Nelson* court held a personal injury action could not be automatically extinguished by the mere passage of time, but rather that the "statute of limitations is an affirmative defense which must be pleaded by a defendant and ruled on by a court." (*Id.* at p. 732.) In *Gallo v. Superior Court* (1988) 200 Cal.App.3d 1375 [246 Cal.Rptr. 587], the court stated, "[a] potential defendant has no vested right in the sense of repose conferred by his knowledge a lawsuit against him appears to be barred." (*Id.* at p. 1383.) In other words, because the limitations period operates as an affirmative defense which is inoperative until certain conditions are met (i.e., it is properly plead and accepted by a court) it cannot be deemed a vested right. (See *In re Marriage of Bouquet, supra,* 16 Cal.3d 583, 591, fn. 7, ["W]e use the word vested here to describe property rights that are not subject to a condition precedent."].)[30]

 Second, even if the running of the limitations period created a vested right in defendant, such a right yields to important state interests, without any violation of due process. In *Addison v. Addison* (1965) 62 Cal.2d 558, 566 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391] the court indicated that: " 'Vested rights, of course, may be impaired "with due process of law" under many circumstances. The state's inherent sovereign power includes the so called "police power" right to interfere with vested property rights whenever reasonably necessary to the protection of the health, safety, morals, and general well being of the people. The annals of constitutional law are replete with decisions approving, as constitutionally proper, the impairing of, and even the complete confiscation of, property rights when compelling public interest justified it. [¶] . . . [¶] *The constitutional question, on principle, therefore, would seem to be, not whether a vested right is impaired by a marital property law change, but whether such a change reasonably could be believed to be sufficiently necessary to the public welfare as to justify the impairment.*' " (Italics added.) The *Addison* court easily permitted impairment of vested property rights by the retroactive application of quasi-community legislation where it was justified by overriding societal concerns. In *In re Marriage of Bouquet, supra,* 16 Cal.3d 583, 594, the court also upheld the impairment of a spouse's vested property

rejected by our Supreme Court: " 'It is no longer open to question that the business of insurance is affected with a public interest. . . . *Neither the company nor a policyholder has the inviolate rights that characterize private contracts. The contract of the policyholder is subject to the reasonable exercise of the state's police power.*' " (*Calfarm Ins. Co. v. Deukmejian, supra,* 48 Cal.3d 805, 830, italics added, citing *Carpenter v. Pacific Mut. Life Ins. Co.* (1937) 10 Cal.2d 307, 329 [74 P.2d 761].)

[30]No due process violation claim can be made if the Legislature simply enacts a one-year statute of limitations, and then extends it. (*Chase Securities Corp. v. Donaldson, supra,* 325 U.S. 304, 316 [65 S.Ct. 1137, 1143] ["certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is *per se* an offense against the Fourteenth Amendment"].)

rights by a community property statute retroactively applied due to the Legislature's intent to correct "rank injustice of . . . former law."[31]

Similarly, in *Battle v. Kessler* (1983) 149 Cal.App.3d 853, 860 [197 Cal.Rptr. 170], the court permitted an amended statute to apply retroactively to previously barred claims, for the period of one year, because the Legislature acted "to right a wrong." (See also *Lent, supra,* 40 Cal.App.4th 1177 [applied Code Civ. Proc. § 340.1 to previously barred claims.]; *Liebig, supra,* 209 Cal.App.3d at p. 834 [applied newly enacted § 340.1, which extended the statute of limitations for child molestation cases to previously barred causes of action, because "the law is clear that vested rights are not immune from retroactive laws when an important state interest is at stake"]; *Nelson v. Flintkote Co., supra,* 172 Cal.App.3d at p. 732.)

■ In enacting section 340.9, the Legislature took action to advance the public interest in protecting insureds mistreated by their insurers at a time when the insureds were most vulnerable. Section 340.9's protection of insureds reflects well-established legislative and judicial policy, and is buttressed by the Legislature's unique power to regulate the "quasi-public" business of insurance. Such legislative action is propelled by an "important state interest" and is constitutional.

> d. *The Term "Statute of Limitations" as Used in Section 340.9, Embraces the Contractual Limitations Period Included in 20th Century's Policy*

An examination of Insurance Code section 2071 reflects that the Legislature, in statutorily dictating policy terms, has effectively changed the four-year limitations period which would otherwise apply to a suit on an insurance contract (Code Civ. Proc., § 337, subd. (1)). Because this statutory dictate results in a contractual provision, it is not incorrect to refer to it as the articulation of a "contractual" limitations period. Accordingly, 20th Century argues that, because section 340.9 refers only to the "applicable *statute* of limitations," it does not apply to the statutorily mandated "contractual" limitations period included in its policy.

---

[31]In *In re Marriage of Bouquet,* Justice Tobriner identified several factors that may be considered in determining whether a retroactive law contravenes the due process clause, including "the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions." (*In re Marriage of Bouquet, supra,* 16 Cal.3d 583, 592.) However, "[w]here 'retroactive application is necessary to subserve a sufficiently important state interest' [citation], the inquiry need proceed no further." (*In re Marriage of Buol* (1985) 39 Cal.3d 751, 761 [218 Cal.Rptr. 31, 705 P.2d 354].)

In the context of applying section 340.9, however, this is a thin semantical reed on which to hang the conclusion that the phrase used in that section, "applicable *statute* of limitations" (italics added) does not also include the statutorily mandated "contractual" limitations period. To the contrary, it seems clear to us that the Legislature intended the phrase "applicable statute of limitations" to embrace the mandated contractual period. Indeed, that is the only limitations period applicable to the claims asserted by policyholders to which the statute is addressed. Since the obvious legislative purpose behind the enactment of section 340.9 was to bring relief to policyholders with claims under policies, *all of which contain the contractual limitations provision*, it would be absurd for us to adopt 20th Century's construction of this phrase.

■ "While it is not the prerogative of the judiciary to rewrite legislation to conform to a *presumed* intent [citation] the [California] Supreme Court reminds us that the primary purpose of statutory construction is for the courts to determine and effectuate the purpose of the law as enacted: 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But "[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." [Citations.] Thus, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." [Citation.] Finally, we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]' [Citation.]" (*McLaughlin v. State Bd. of Education* (1999) 75 Cal.App.4th 196, 210-211 [89 Cal.Rptr.2d 295], original italics, citing *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175]; *People v. Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].) "[E]ach sentence [phrase and word] must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

In *McLaughlin v. State Bd. of Education, supra,* 75 Cl.App.4th 196 the court was called upon to interpret Proposition 227, the " 'English Language in Public Schools' " initiative statute. (75 Cal.App.4th 196 at p. 201.) The initiative enacted a statutory scheme which required California public

schools to teach children with limited English proficiency only in English. The *McLaughlin* court was asked to determine, in view of the fact that Proposition 227 was silent on the matter, whether the initiative was subject to a provision in Education Code section 33050, which generally allows schools to apply for waivers from such program requirements.

After thoroughly reviewing the history of both Proposition 227 and Education Code section 33050, the court concluded that the respondent school boards could not, under section 33050, apply for waivers from the requirements of the statutory scheme enacted by Proposition 227. (*McLaughlin v. State Bd. of Education, supra,* 75 Cal.App.4th at p. 202.) The court determined that "[t]o the extent there [was] any ambiguity as to the intent of Proposition 227, the legislative history clarifie[d] that the Chapter was designed to wrest from school boards and administrators decisionmaking authority for selecting between [limited English proficiency] educational options, and repose this power exclusively in parents of [limited English proficiency] students." (*Ibid.*)

 In the present case, our review of the legislative history makes it clear that the Legislature intended the phrase "applicable statute of limitations" to embrace the mandated contractual period. During the legislative process, Senate Bill No. 1899 was amended to provide, "Notwithstanding any other provision of law *or contract*, . . . ."[32] Clearly, the Legislature sought to revive the time bar created by the one-year limitations period contained in policies providing insurance coverage for the 1994 Northridge earthquake. Given the obvious and universally appreciated fact that every claimant to be benefited by section 340.9 has a one-year limitations period in his or her insurance policy, and it was the bar created by that one-year clause (upon which insurers had relied in denying claims) that the Legislature sought to address, it would be folly to conclude that the Legislature intended to make a distinction between "statutory" and "contractual" limitations periods when it enacted section 340.9. In this context, the use of the term, "applicable *statute* of limitations" was simply a generic reference to the limitations period that the Legislature intended to reach by its enactment of section 340.9. Such generic use of the term was no different than the "lawyer's shorthand" utilized by 20th Century itself when it demurred to

---

[32]This amendment was proposed by the author of Senate Bill No. 1899, Senator Burton, who stated in the Senate Judiciary Committee, by way of explanation, that the addition of the words "or contract" after the word "law" was technical in nature "since earthquake policies are written pursuant to form fire policy [*sic*] contained in the Insurance Code."

Ahles's pleadings on the ground that the "*statute* of limitations *contained in the insurance policy*" had expired.[33]

Any other interpretation would not only fail to conform to the spirit of section 340.9, but would lead to an absurd result. The legislative history of section 340.9 indicates the statute was enacted to "bring needed relief to the victims of the Northridge earthquake." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1988 (1999-2000 Reg. Sess.) as amended May 23, 2000, p. 2.) Since all the victims' policies contain the one-year *contractual* limitations period, to interpret section 340.9 as not applying to that limitations period would, in effect, completely nullify the statute. Accordingly, we conclude the Legislature's failure to refer to a "contractual" limitations period can only be attributed to " 'drafters' oversight.' " (*McLaughlin v. State Bd. of Education, supra,* 75 Cal.App.4th at p. 223.)

Our conclusion is bolstered by the court's decision in *California Union Ins. Co. v. Poppy Ridge Partners, supra,* 224 Cal.App.3d 897. There, the court determined that, to rely on the expiration of a contractual limitations period as a defense, the defendant was required to raise it in his or her answer, just as he or she would be required to raise a statutory limitations period. The court noted that the defendant had advanced "no substantive, convincing reason for distinguishing [the contractual limitations period] from a statutory limitations period . . . ." (*Id.* at p. 903.) Just like a statutory limitations period, the contractual limitations period mandated by Insurance Code section 2071 could be waivable in advance by contract or a failure to plead it. (224 Cal.App.3d at p. 903.) The court recognized that, "[f]or some purposes contractual and statutory limitations periods have been treated similarly." (*Ibid.*)[34]

The construction and application of section 340.9 renders it a statute which necessitates the statutorily required contractual limitation to be equated with a statutory limitation. For purposes of a proper reading of section 340.9, they are the same and should be so construed.

[33]While it is true that the one-year limitations period is only mandated by Insurance Code section 2071 for fire policies (but not for separately issued "stand alone" earthquake policies) we attribute no significance to such circumstance. As noted in footnote 32, *ante,* the author of Senate Bill No. 1899 placed no significance on the distinction either. He simply pointed out that it was the insurers' standard practice to incorporate the form language from Insurance Code section 2071 into all of its policies. For all of the reasons which we have discussed, there can be no doubt that section 340.9 was intended to revive claims barred by the one-year "contractual" provision in policies of insurance whether those provisions were mandated by statute or simply copied by insurers into their "stand alone" earthquake policies. Whether mandated or not, we are satisfied that the Legislature had the power to revive claims barred under such clauses and clearly intended to do so.

[34]See also our discussion of this point in a related context in the preceding part c.(2). (*Lawrence v. Western Mutual Ins. Co., supra,* 204 Cal.App.3d at p. 573.)

### e. *Ahles's Claim Was Not "Litigated to Finality"*

Code of Civil Procedure section 340.9, subdivision (d)(1) provides that revival of the limitations period does not apply to claims which have been "litigated to finality in *any* court of competent jurisdiction prior to [January 1, 2001]." (Italics added.) In California, however, "[a]n action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed . . . ." (Code Civ. Proc., § 1049.) ■■■ Thus, a judgment in California is not final for all purposes until "all possibility of direct attack thereon by way of (1) appeal, (2) motion for a new trial, or (3) motion to vacate the judgment has been exhausted." (*Southern Public Utilities Dist. v. Silva* (1956) 47 Cal.2d 163, 165 [301 P.2d 841]; 7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 7, p. 544); see also *McKee v. National Union Fire Ins. Co.* (1993) 15 Cal.App.4th 282, 286 [19 Cal.Rptr.2d 286].) In *McKee,* the court interpreted Insurance Code section 11580, subdivision (b)(2), which requires that every insurance policy contain a provision providing that an action may be brought on the policy after final judgment against the insured has been entered. The court interpreted section 11580, subdivision (b)(2), as meaning that "the statute and the standard policy language permit an action against an insurer only when the underlying judgment is final and 'final,' for this purpose, means an appeal from the underlying judgment has been concluded or the time within which to appeal has passed." (*McKee v. National Union Fire Ins. Co., supra,* 15 Cal.App.4th at p. 285.) Thus, in this sense, the courts speak of "finality" for *res judicata* purposes. (*Id.* at p. 288.)

■■■ By *not* using the ambiguous term, "final judgment," but rather limiting the exception to cases which have been "litigated to finality," the Legislature has in our view, made it clear that it intends section 340.9 to apply to all cases which have not been finally decided *on appeal.* Thus, the Legislature has emphasized its intention that "finality" in the res judicata sense is required before section 340.9, subdivision (d)(1)'s exception will apply. Indeed, by not using the word "judgment" in section 340.9, subdivision (d)(1), the Legislature avoided any suggestion that a "final" (for notice of appeal purposes) trial court judgment might make section 340.9 inapplicable. Thus, " 'the settled rule in California . . . that a judgment is not final so long as an appeal is pending therefrom' " applies here (*McKee v. National Union Fire Ins. Co., supra,* 15 Cal.App.4th at p. 286, quoting *Jennings v. Ward* (1931) 114 Cal.App. 536, 537 [300 P. 129]), and section 340.9,

subdivision (d)(1), does not bar the revived statute of limitations available under section 340.9 from applying to this action.[35]

We therefore reject 20th Century's argument that the statute's reference to claims litigated to finality in *any* court of competent jurisdiction would apply to the trial court's earlier order sustaining 20th Century's demurrer without leave to amend. While the superior court certainly is a court of competent jurisdiction, for the reasons discussed above, we cannot construe the statutory language so narrowly. Litigated finality must be read to mean a final judgment in the res judicata sense.

f. *The Revival of Section 340.9 Extends to Ahles's Bad Faith Tort Claim but Not to Her Fraud Claim*

Section 340.9 revives *"any insurance claim* for damages *arising out of* the Northridge earthquake" which is barred as of January 1, 2001, *solely* because the applicable statute of limitations has expired. Thus, the express language of the statute applies not only to contract damage claims, but also to tort claims for insurer bad faith (i.e., a breach of the implied covenant of good faith and fair dealing). To determine the intent of statutory language " ' "[t]he court turns first to the words themselves for the answer." ' " (*J.C. Penney Casualty Ins. Co. v. M.K.* (1991) 52 Cal.3d 1009, 1020 [278 Cal.Rptr. 64, 804 P.2d 689].) A claim based on an insurer's breach of the covenant of good faith and fair dealing that is *implied in every policy of insurance* is clearly within the plain meaning of the phrase *"any insurance claim . . . arising out of . . . ."* (§ 340.9, subd. (a), italics added.)

Moreover, the plain reading of the statute's words comports with the legislative intent in enacting this law. The legislative history reveals "allegations of widespread abuse by insurers who . . . may have committed numerous acts of bad faith by denying the legitimate claims of potentially thousands of Northridge earthquake victims." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1899 (1999-2000 Reg. Sess.) as amended May 23, 2000, pp. 2-3.) The "companies repeatedly low-balled claims, failed to inform policyholders of their benefits and forced many claimants to sue to get full payment." (*Id.* at p. 3.) "According to the author, SB 1899 seeks to provide these individuals, who . . . were victimized twice (once by the earthquake and a second time by their insurance companies) with a reasonable 'second chance' to seek redress for their damages." (*Ibid.*) Inclusion of

---

[35]We recognize that one federal case has construed section 340.9, as does 20th Century. (See *Campanelli v. Allstate Ins. Co.* (C.D.Cal. 2000) 119 F.Supp.2d 1073, 1075.) We believe, however, to the extent that *Campanelli* is not procedurally distinguishable, it was wrongly decided and we decline 20th Century's invitation to follow it.

tort claims in section 340.9 furthers the legislative purpose that victims obtain damages for their insurers' misconduct. "The availability of tort remedies in the limited context of an insurer's breach of the covenant advances the social policy of safeguarding an insured in an inferior bargaining position who contracts for calamity protection, not commercial advantage." (*Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 400 [97 Cal.Rptr.2d 151, 2 P.3d 1], italics omitted.)

Finally, the Legislature contemplated that the new law would revive claims barred by the insurance policies' one-year limitations provision, the minimum limitations period set by Insurance Code section 2071.[36] Case law has likewise applied that same one-year limitations provision to claims for insurers' breach of the covenant of good faith and fair dealing. (See, e.g., *Jang v. State Farm Fire & Casualty Co.* (2000) 80 Cal.App.4th 1291, 1301 [95 Cal.Rptr.2d 917] [holding that "[r]egardless of whether the insured elects to file a complaint alleging solely tort claims . . . an action seeking damages recoverable under the policy for a risk insured under the policy is merely a 'transparent attempt to recover *on the policy*' " (original italics)]; *Velasquez v. Truck Ins. Exchange* (1991) 1 Cal.App.4th 712, 722 [5 Cal.Rptr.2d 1] [opining that a "bad faith action based on denial of a claim in the underlying policy is an action on the policy"]; *Prieto v. State Farm Fire & Casualty Co.* (1990) 225 Cal.App.3d 1188, 1195 [275 Cal.Rptr. 362] [court found "neither reason nor authority to signify that a plaintiff's election to seek redress under the implied covenant rather than the express contract should nullify the legislatively prescribed limitation for actions that are 'on the policy' because grounded in a failure to pay benefits that are due under the policy and indeed constitute its very reason for being"]; see also *Abari v. State Farm Fire & Casualty Co.* (1988) 205 Cal.App.3d 530, 536 [252 Cal.Rptr. 565]; *Lawrence v. Western Mutual Ins. Co., supra,* 204 Cal.App.3d at p. 575.)

With respect to Ahles's fraud claim, however, we reach the opposite conclusion. While we are persuaded that bad faith claims that are *seeking damages recoverable under the policy*, such as those presented in *Jang, Velasquez, Prieto, Abari and Lawrence,* have the same limitations period applicable to claims for breach of contract, and constitute *insurance claims*, the rationale which justifies that conclusion has no application to Ahles's fraud claim. Her action for fraud does not rest on 20th Century's failure to perform under the policy, but rather on its alleged acts of deceit and

---

[36] According to the bill's author, the one-year statute of limitations contained in Insurance Code section 2071 has barred victims from being compensated for their losses because they were tragically misled about the extent of damage suffered as a result of the earthquake and once they learned the truth they were prohibited by the statute from filing a claim. (Sen. Rules Com., Off. of Sen Floor Analyses, 3d reading analysis of Sen. Bill 1899 (1999-2000 Reg. Sess.) as amended May 23, 2000, p. 2.)

deception that go well beyond simple nonperformance. That the purpose of such alleged fraudulent behavior may have been to evade performance under the policy does not alter the conclusion that an entirely separate act of misconduct has been alleged. In addition, Ahles does not seek damages recoverable under the policy, but rather damages arising from 20th Century's alleged misrepresentations and Ahles's reliance, including such things as out of pocket premium expense, lost opportunity damages and recovery for resulting emotional distress. For these reasons, we do not perceive Ahles's fraud claim as an *"insurance claim for damages"* as that term is used in section 340.9. Therefore, Ahles's fraud claim remains subject to the three-year limitation period set out in Code of Civil Procedure section 338, and her claim, if expired under that statute, will not be revived by section 340.9.

## DISPOSITION

The order to show cause heretofore issued is discharged. The trial court's order of December 5, 2000, is affirmed and the peremptory writ is denied. The stay order heretofore issued shall be vacated as of the date of the filing of a remittitur herein. Ahles shall recover her costs in these writ proceedings.

Klein, P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied August 20, 2001, and petitioner's petition for review by the Supreme Court was denied October 17, 2001.