[No. B225632. Second Dist., Div. Eight. Feb. 9, 2011.]

BLUE SHIELD OF CALIFORNIA LIFE & HEALTH INSURANCE
COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MYRNA YUMIKO KAWAKITA, Real Party in Interest.

[black redaction block]

## COUNSEL

Manatt, Phelps & Phillips, Gregory N. Pimstone, Joanna S. McCallum and John T. Fogarty for Petitioner.

No appearance for Respondent.

Shernoff Bidart Echeverria, William M. Shernoff, Evangeline F. Grossman, Joel A. Cohen and Howard S. Shernoff for Real Party in Interest.

## OPINION

**RUBIN, Acting P. J.**—Blue Shield of California Life & Health Insurance Company (Blue Shield) seeks a peremptory writ of mandate directing the trial court to reverse its order denying Blue Shield's motion for summary adjudication of plaintiff and real party in interest Myrna Yumiko Kawakita's tort cause of action for bad faith breach of a health insurance policy she obtained from Blue Shield. Blue Shield contends the cause of action is barred by the two-year limitations period for such claims, and was not extended to three

years by the policy's statutorily mandated limitations provision. Assuming that Blue Shield's interpretation of the statutorily mandated limitation provision is correct, we hold that Blue Shield, as permitted by law, drafted a more favorable provision that gave Kawakita three years to sue for a tortious breach of the implied covenant of good faith and fair dealing. Accordingly, we deny the petition.

## FACTS AND PROCEDURAL HISTORY

In July 2009, Myrna Kawakita sued Blue Shield, stating causes of action for breach of contract and tortious breach of the duty of good faith and fair dealing based on Blue Shield's August 2006 decision to rescind Kawakita's health insurance policy shortly after she received approval for, and then underwent, gastric bypass surgery. After her medical providers submitted claim forms for the procedure, Blue Shield looked at Kawakita's medical records and learned that Kawakita's application for coverage painted an inaccurate picture of her health.

The application said Kawakita was five feet eight inches tall and weighed 140 pounds. It also answered "no" to questions about the existence of certain medical conditions as part of her medical history. In fact, Kawakita was five feet six inches tall and weighed 307 pounds. Her medical records showed the existence of numerous ailments that were not listed on her application, including hypothyroidism, high cholesterol, insomnia, depression, and obesity, along with a physician's recommendation that she undergo a psychiatric evaluation and attend weight loss classes. Blue Shield rescinded primarily because of the height and weight discrepancies, but its rescission letter also noted the existence of Kawakita's various health problems.

Kawakita bought her policy through Blue Shield's alleged agent Steven M. Stendel, and claimed that Stendel was responsible for the misstatements in her application. She sued Blue Shield for breach of contract, tortious breach of the implied covenant of good faith and fair dealing, and declaratory relief.[1] At the heart of her allegations was the contention that Blue Shield had

---

[1] Claims for breach of the implied covenant of good faith and fair dealing may sound in either contract or tort, depending on the remedies being sought. A contract claim limits the plaintiff to contract remedies only, while a tort claim permits recovery of noncontract damages, such as emotional distress, punitive damages, and attorney's fees. (*Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 467, fn. 19 [64 Cal.Rptr.3d 632].) For ease of reference, we will refer to contract-based claims for breach of the implied covenant as contractual bad faith claims, and will refer to tort-based claims for such a breach as tortious bad faith claims.

Our decision addresses the statute of limitations and related contract provision only. We express no opinion on the merits of Kawakita's claims.

initially authorized the gastric bypass procedure and its decision to rescind the contract and therefore not pay for the surgery was improper.[2]

Blue Shield brought a motion for summary adjudication of the tortious bad faith cause of action, contending it was barred by the two-year statute of limitations for such claims. (Code Civ. Proc., § 339, subd. 1; *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1144, fn. 4 [271 Cal.Rptr. 246].) Insurance Code section 10350.11 requires that all health insurance policies include a provision stating, in essence, that all actions on a policy must be brought within three years of the date on which written proofs of loss must be furnished.[3] Anticipating that Kawakita might rely on section 10350.11 to contend the statute extended the two-year limitations period for bad faith claims to three years, Blue Shield's motion argued that the three-year provision applied to only breach of contract and contractual bad faith claims, which are otherwise governed by a four-year statute of limitations (Code Civ. Proc., § 337), while tortious bad faith claims were still subject to the shorter two-year period.

Although section 10350.11 prescribes the language to be used in a health insurance policy's provision concerning the time in which to sue on the policy, insurers are permitted to use different language that is not less favorable to an insured. (§ 10350.) Kawakita's opposition to the motion pointed out key differences between the statutorily required limitations provision and the language actually used by Blue Shield. Under the policy issued to Kawakita, suit for any matters arising out of the policy could be brought within three years of the date when coverage for benefits was denied.[4] Kawakita argued that the broader language used by Blue Shield applied to her tortious bad faith claim.

The trial court denied Blue Shield's summary adjudication motion. According to the trial court, the language in Blue Shield's limitation provision was "exactly the same" as that in section 10350.11. Because tortious bad faith claims were considered to be actions "on the policy" for purposes of the catchall one-year limitations provision mandated by statute for fire insurance policies (§ 2071), the trial court reasoned that such claims were also on the policy for purposes of health insurance policies under section 10350.11. By parity of reasoning, the trial court found that bad faith tort actions against health insurers must be subject to a three-year limitations period under section 10350.11.

---

[2] Kawakita also sued Stendel and the agency where he worked for negligence and fraud. They are not parties to this writ proceeding.

[3] All further undesignated section references are to the Insurance Code.

[4] We set forth the exact language of both section 10350.11 and the Blue Shield policy limitations provision as part of our discussion.

Blue Shield filed a petition for a peremptory writ asking us to reverse the trial court's order. (Code Civ. Proc., § 437c, subd. (m)(1).) We issued an order to show cause why that petition should not be granted.

## STANDARD OF REVIEW

In addition to moving for summary adjudication, parties may move for summary adjudication of individual causes of action on the ground that they lack merit. (Code Civ. Proc., § 437c, subd. (f)(1).) The rules applicable to summary judgments apply equally to motions for summary adjudication. (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819 [44 Cal.Rptr.2d 56].) Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) In reviewing an order granting summary judgment, we must assume the role of the trial court and redetermine the merits of the motion. In doing so, we must strictly scrutinize the moving party's papers. The declarations of the party opposing summary judgment, however, are liberally construed to determine the existence of triable issues of fact. All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. While the appellate court must review a summary judgment motion by the same standards as the trial court, it must independently determine as a matter of law the construction and effect of the facts presented. (*S.M. v. Los Angeles Unified School Dist.* (2010) 184 Cal.App.4th 712, 716 [109 Cal.Rptr.3d 270].) Accordingly, we are not bound by the trial court's stated reasons and review only the ruling, not its rationale. (*Law Offices of Dixon R. Howell v. Valley* (2005) 129 Cal.App.4th 1076, 1092 [29 Cal.Rptr.3d 499].)

A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subds. (*o*)(2), (p)(2).) If the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense. In doing so, the plaintiff cannot rely on the mere allegations or denial of her pleadings, "but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (*Id.*, subd. (p)(2).) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493], fn. omitted.)

## DISCUSSION

1.  *Blue Shield's Contention That Section 10350.11 Does Not Extend the Limitations Period for Tortious Bad Faith Claims*

██  Health insurance policies are considered a form of disability insurance (§ 106, subd. (b)), and all such policies sold in California must contain certain provisions as set forth in sections 10350.1 through 10350.12.[5] (§ 10350.) Section 10350.11 concerns the time limitation for a policyholder to sue an insurer. It requires policies to state: "No action at law or in equity shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished." Sections 10350.4 through 10350.7 establish the terms of policy provisions concerning claim forms, notice of claims, and the filing of proofs of loss. With exceptions not relevant here, a written proof of loss must be furnished to an insurer at its office for any claim covered by the policy within 90 days of a loss. (§ 10350.7.)

Relying primarily on federal court decisions, Blue Shield contends that section 10350.11 establishes nothing more than a contractual limitations period keyed to the filing of proofs of loss that has no effect on the statutory two-year limitations period (Code Civ. Proc., § 339, subd. 1) for tortious bad faith claims. Instead, Blue Shield contends it applies to only actions on the policy, which means only claims for breach of contract or for contractual bad faith, not for tortious bad faith.

The first of these decisions is *Wetzel, supra,* 222 F.3d 643, which concerned the statute of limitations in an action under the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et seq. (ERISA)). Because ERISA does not contain a statute of limitations, the federal courts look to the most analogous state law limitations period in the state where the action is brought. (*Wetzel, supra,* at pp. 646–647.) In *Wetzel,* the Ninth Circuit overruled its earlier decision in *Nikaido v. Centennial Life Ins. Co.* (9th Cir. 1994) 42 F.3d 557, which had held that for an ERISA action brought in California arising from a health insurance plan, section 10350.11 provided the most analogous limitations period. *Wetzel* said that California law treated policy provisions required by section 10350.11 as a contractual limitations period that was

---

[5] These provisions are part of a uniform act adopted by California and 41 other states, Puerto Rico and the Virgin Islands. (See *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program* (9th Cir. 2000) 222 F.3d 643, 647–648, fn. 5 (*Wetzel*).)

subject to the rules governing the interpretation of contracts.[6] Section 10350.11 therefore made the statute of limitations a matter of contract, creating a provision "relating to the handling of claims" that was distinct and apart from any statutory limitation period. Because section 10350.11 was "not itself a statute of limitations," it could not supply the limitations period for ERISA actions. Instead, the four-year limitations period for breach of contract actions (Code Civ. Proc., § 337) applied. The Ninth Circuit remanded the case to the district court for a determination of the effect of the policy's three-year contractual limitations provision on the plaintiff's ERISA claim. (*Wetzel, supra*, pp. 648, 650.)

In *Flynn v. Paul Revere Ins. Group* (9th Cir. 2001) 2 Fed.Appx. 885, the Ninth Circuit applied *Wetzel* and held that a policyholder's tortious bad faith claim against a health insurer was subject to the statutory two-year limitations period for such claims because section 10350.11 established nothing more than a contractual limitations period that operates separate and apart from the ordinary statutory limitations period. Accordingly, the *Flynn* court held, both the statutory and contractual limitations periods had to be satisfied. (*Flynn*, at p. 886.)[7] In *Heighley v. J.C. Penney Life Ins. Co.* (C.D.Cal. 2003) 257 F.Supp.2d 1241, the federal district court relied on both *Wetzel* and *Flynn* when holding that the three-year limitation provision mandated by section 10350.11 did not extend the two-year limitations period applicable to claims for tortious bad faith.[8] Because the contractual limitation period mandated by section 10350.11 was something distinct and apart from the statute of limitations, "[c]ompliance with the contractual provision will not save a claim . . . where the statute of limitations has already expired." (*Heighley*, at pp. 1257–1258.)

An earlier decision by a California appellate court suggests a similar result. In *NN Investors Life, supra*, 208 Cal.App.3d 1070, the court affirmed a summary judgment for a health insurer because the plaintiff insured sued

---

[6] The *Wetzel* court cited *NN Investors Life Ins. Co. v. Superior Court* (1989) 208 Cal.App.3d 1070 [256 Cal.Rptr. 598] (*NN Investors Life*) and *Mize v. Reserve Life Ins. Co.* (1975) 48 Cal.App.3d 487 [121 Cal.Rptr. 848] (*Mize*) for this proposition. We discuss both decisions below, and neither holds nor suggests that a contractual limitations provision that is mandated by statute differs in any meaningful way from an ordinary statute of limitations. When interpreting the one-year policy limitation provision mandated by statute for fire insurance policies (§ 2071), the court in *20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247, 1272 [109 Cal.Rptr.2d 611], held that such contractual limitations periods are "properly treated as a *statute* of limitations . . . ." (Original italics.)

[7] Although *Flynn* was unpublished and therefore not citable in federal court, it may serve as persuasive authority in California's state courts. (*Roskind v. Morgan Stanley Dean Witter & Co.* (2000) 80 Cal.App.4th 345, 355–356 & fn. 7 [95 Cal.Rptr.2d 258]; Cal. Rules of Court, rule 8.1115(a).)

[8] The policy at issue in *Heighley* was for accidental death, which is also considered a disability policy subject to the provisions of sections 10350 through 10354. (§ 106, subd. (a).)

more than three years after the 90-day period for filing proofs of loss expired, meaning the action was barred by the policy provision on section 10350.11.[9] Because the action was outside the three-year time limit provided by the policy, the court said it did not have to decide whether section 10350.11 governed the plaintiff's cause of action for tortious bad faith. The court noted in dicta that it did not matter whether the tort claim was governed by the two-year statute of limitations or the three-year policy limitation period because "the relevant statutory periods are actually *shorter* than the one established by the policy. [Citations]." (208 Cal.App.4th at p. 1074, original italics.) As Blue Shield notes, this language implies that the two-year statute of limitations for tortious bad faith claims is not extended to three years by section 10350.11.[10]

None of these decisions concerned policy language that deviated from section 10350.11. Assuming for argument's sake that Blue Shield's interpretation of section 10350.11 is correct and that inclusion of section 10350.11's language in a policy does not lengthen the two-year statute of limitations for tortious bad faith claims, as we explain below, we conclude that the statutory language does not apply to Blue Shield's policy.

2. *The Limitations Provision Drafted by Blue Shield Applies to Kawakita's Tortious Bad Faith Claim*

█ As noted earlier, even though health insurance and other disability policies "shall contain" provisions with the wording that appears in section 10350.1 through 10350.12, "the insurer may, at its option, substitute for one or more of such provisions corresponding provisions of different wording approved by the [Insurance] commissioner which are in each instance not less favorable in any respect to the insured or the beneficiary." (§ 10350.) We conclude that Blue Shield substituted a more favorable contractual limitation

---

[9] Although the *NN Investors Life* court never mentioned section 10350.11, the action arose from a health insurance policy and the decision quoted a policy provision that was virtually identical to the language of that statute. (*NN Investors Life, supra,* 208 Cal.App.3d at pp. 1073–1074.)

[10] Another decision cited by Blue Shield is *Mize, supra,* 48 Cal.App.3d 487. In *Mize,* the administrator of an estate sued a life insurance company to recover policy benefits that had been paid to the beneficiary, who had murdered the named insured. In holding that the statute of limitations had been tolled until the beneficiary was convicted of murder, the appellate court considered the applicability of a policy provision that required actions to be brought within three years of the time when written proof of loss had to be furnished. The court held that it would be inequitable to preclude application of the tolling doctrine to that provision. (*Id.* at p. 495.) We do not see how the *Mize* decision applies in this context.

provision that should be interpreted as setting a three-year time limit for Kawakita's tortious bad faith cause of action.[11]

Under the heading *"Commencement of Legal Action,"* the policy issued to Kawakita provides: "Any suit . . . to recover . . . damages concerning . . . any other matter arising out of this Plan, may not be brought prior to the expiration of 60 days after written proof of claim has been furnished and must be commenced *no later than three years after the date the coverage for benefits in question were first denied."* (Italics added.)

This is far different from the terms of section 10350.11, which states that no action "to recover on this policy" shall be brought three years "after the time written proof of loss is required to be furnished." Blue Shield contends that actions on a policy are limited to the payment of benefits under contract law theories.[12] However, in addition to actions to recover benefits, Blue Shield's limitation provision applies to damages concerning the provision of

---

[11] While section 10350 states that different language not less favorable than the statutory provisions is allowed, section 10390 states that policy provisions in conflict with that chapter of the Insurance Code would still be governed by that chapter. We asked for and received supplemental briefing from the parties concerning whether section 10350 could be construed to permit the use of more favorable provisions, as opposed to provisions with different wording which were substantially equivalent to the statutorily prescribed terms. No reported decision, and nothing in the legislative history, addresses this issue. Kawakita contends, and Blue Shield somewhat reluctantly concedes, that an insurer may substitute a more favorable limitations period that extends the time period for bringing a tortious bad faith claim. This is consistent with the well-established principle that the parties to a contract may agree to shorten or extend the statute of limitations. (See generally *Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1547–1548 [46 Cal.Rptr.2d 33].)

Blue Shield contends, for the first time on appeal, that there is no evidence it ever received approval from the Insurance Commissioner to use language that differed from section 10350.11. Because Blue Shield did not raise the issue in the trial court, it was waived. (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28–31 [21 Cal.Rptr.2d 104].) Should such evidence be introduced at trial, we express no opinion on its effect.

[12] At one time, actions for tortious bad faith were not considered actions on a policy for purposes of an insurance policy's shortened limitations period for such actions. (*Frazier v. Metropolitan Life Ins. Co.* (1985) 169 Cal.App.3d 90, 103–104 [214 Cal.Rptr. 883] (*Frazier*) [considering two-year limitation provision in life insurance policy]; *Murphy v. Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 46–49 [147 Cal.Rptr. 565] [one-year time limit for fire insurance mandated by § 2071].) Tort actions for breach of the implied covenant are now considered to be on the policy so long as their essential aim is the recovery of benefits that were owed under the policy. (*Jang v. State Farm Fire & Casualty Co.* (2000) 80 Cal.App.4th 1291, 1298–1301 [95 Cal.Rptr.2d 917] [regardless of whether the insured's complaint alleges only tort claims, an action seeking damages recoverable under the policy for a risk insured under the policy is a transparent attempt to recover on the policy]; *Velasquez v. Truck Ins. Exchange* (1991) 1 Cal.App.4th 712, 720–722 [5 Cal.Rptr.2d 1] [bad faith claim under fire insurance policy was

benefits or the processing of claims, or anything else arising out of the plan. Then, instead of keying the limitation period to the time by which proofs of loss must be filed, it has the three-year period run from the time coverage was first denied, an event which triggers the running of the statute of limitations for tortious bad faith claims. (*Frazier, supra,* 169 Cal.App.3d at pp. 103–104.)

**(3)** Had Blue Shield used language that was substantially identical to section 10350.11, the traditional insurance contract interpretation rule that ambiguous policy provisions are construed most favorably to the insured would not have been applicable. Instead, we would use traditional statutory interpretation principles and construe the language in order to implement the intent of the Legislature. Because Blue Shield departed from the statutorily mandated language, we will apply insurance contract interpretation principles and construe any ambiguities in a manner that protects the expectations of a reasonable policyholder. (*National Auto. & Cas. Inc. Co. v. Underwood* (1992) 9 Cal.App.4th 31, 41–42 [11 Cal.Rptr.2d 316]; *National Auto. & Casualty Inc. Co. v. Frankel* (1988) 203 Cal.App.3d 830, 836–837 [250 Cal.Rptr. 236], disapproved on another ground in *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 744, fn. 11 [29 Cal.Rptr.2d 804, 872 P.2d 143].)

■ In determining whether the policy language at issue here includes tort causes of action, we observe that contractual provisions requiring the parties to arbitrate "any dispute or other disagreement arising from or out of" an agreement, or "any problem or dispute" that arose under or concerned the agreement, have been held to be so broad that they encompass tort as well as contract claims. (*EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1322 [59 Cal.Rptr.3d 340]; *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 684 [99 Cal.Rptr.2d 809].) The same is true of contractual attorney's fee provisions that apply to any dispute arising out of an agreement. (*Silver v. Boatwright Home Inspection, Inc.* (2002) 97 Cal.App.4th 443, 449 [118 Cal.Rptr.2d 475].) We see no reason why that same logic should not apply here.[13]

In essence, the policy told Kawakita that any suit for damages for any matter arising out of the plan had to be brought within three years of the

---

on the policy because it sought to recover on the policy; additional damage claims, such as those for cancellation of the policy, were inextricably bound up with the contract damage issue].)

[13] Blue Shield contends that its use of the term "arising out of the Plan" must be read as a reference to contract-related claims. This contention ignores the preceding phrase "or any other matter."

time her claim was denied. The policy includes provisions that allow Blue Shield to cancel the policy if it learns that material facts were concealed or misrepresented during the application process. Thus, Blue Shield's invocation of its contractual right to rescind the policy was a matter that arose from the plan. The policy made no attempt to differentiate between tort claims and contract claims. When these two provisions are read together, a reasonable layperson would interpret them to mean that she had three years to bring any action based upon an allegedly wrongful cancellation of the policy. (*Bischel v. Fire Ins. Exchange* (1991) 1 Cal.App.4th 1168, 1176 [2 Cal.Rptr.2d 575] [policy should be read as a layperson would read it].)[14]

Blue Shield challenges this interpretation on three grounds: (1) because the provision is still tied to filing proofs of claim, and Kawakita never did so, she may not take advantage of the provision; (2) evidence that Blue Shield intended to waive the two-year limitations period for tortious bad faith claims is not in the record; and (3) the phrase "any other matter arising out of this Plan" must be construed with reference to the more limited class of occurrences listed before it, which are exclusively contract-related claims. We take each in turn.

The first ground is a variant of Blue Shield's contention that section 10350.11 is nothing more than part of a statutory proof of loss framework for contract claims which are brought on the policy, and therefore does not apply at all to tortious bad faith claims. Under Blue Shield's policy, when a preferred provider supplies medical treatment, the provider typically files a claim with Blue Shield. The policy states that an insured files a proof of claim when a preferred provider fails to bill Blue Shield, or when the insured receives treatment from a nonpreferred provider. During oral argument, counsel for Blue Shield contended that the policy's limitation provision did not apply because Kawakita's *providers* submitted claims to Blue Shield, meaning that Kawakita herself never filed the proof of claim that was required to trigger the three-year period.[15]

This contention might make sense if we were limited to construing section 10350.11, and if Blue Shield's interpretation of that provision were correct. As already discussed, however, Blue Shield's use of more favorable language has taken this matter outside the realm of statutory interpretation and into that of contract interpretation. Therefore, we construe the policy as a reasonable

---

[14] Therefore, we disagree with the trial court's conclusion that the policy's limitation provision was exactly the same as section 10350.11. As noted earlier, however, we review the trial court's ruling, not its rationale.

[15] Blue Shield's summary adjudication motion included a declaration from litigation specialist Leslie Crawford stating that Blue Shield received claims for Kawakita's surgery from her medical providers. It is therefore undisputed that claims were submitted in that manner.

policyholder would, and resolve all ambiguities in Kawakita's favor. With these rules in mind, we examine certain relevant policy provisions.

Under the heading, *"Notice and Proof of Claim,"* the policy provides the mechanism by which an insured submits a proof of claim. Blue Shield contends this means that only an insured may do so, and that its limitation provision applies only in that instance. However, under the caption *"Your Blue Shield Life Active Start Plan 25 and How to Use It—,"* the policy states: **"Preferred Providers** *submit claims* for payment after their services have been received. You or your **Non-Preferred Providers** also *submit claims* for payment after Services have been received." (Italics added.) Under the caption **"Payment of Benefits,"** and the subhead **"Time and Payment of Claims,"** the policy states that "Claims will be paid promptly upon receipt of *proper written proof* and determination that benefits are payable." (Italics added.) This is immediately followed by the subhead, **"Payment of Claims,"** which states: "Participating Providers and Preferred Providers are paid directly by Blue Shield Life. [¶] If the Insured receives Services from a Non-Preferred Provider, payment will be made directly to the Subscriber, and the Insured is responsible for payment to the Non-Preferred Provider . . . ."

We distill this language as follows. First, the policy states that claims are submitted in two ways—by both the insured and by preferred providers. No meaningful distinction between the two claims submission mechanisms is evident. Second, the policy goes on to state that claims—which now presumably include those made by a provider or a policyholder—are paid upon "proper written proof." The policy's limitation provision then states that an action may not be brought until 60 days after "written proof of claim" has been filed. We conclude that a reasonable insured would read these provisions together to mean that all claims, whether made by the insured or a preferred provider, require written proof, and that the time to sue begins to run after a claim is submitted in either manner.[16]

---

[16] We also note that under section 10350.5, disability policies must state that a notice of claim *"given by or on behalf of the insured . . .* shall be deemed notice to the insurer." (Italics added.) Blue Shield's claim notice provision did not include this language, but our interpretation makes it accord with the statutory requirement.

Furthermore, Blue Shield's interpretation would leave policyholders without guidance as to the limitation period for suits brought when claims filed by preferred providers are denied. The result of such an interpretation is unclear, but, arguably, the three-year limitation period would evaporate, leaving the statutory two-year period for tortious bad faith claims, while also reinstating the statutory four-year period for breach of contract claims. In other words, there would be a contractual limitations period of three years based on denied claims when those claims were for services rendered by a nonpreferred provider and the insured filed the claim, and some unstated limitations period for denied claims for services rendered by a preferred provider and the provider filed the claim. As Blue Shield itself noted at oral argument, such a result would be nonsensical.

We alternatively conclude that once Blue Shield cancelled Kawakita's policy, it waived the proof of loss provision. To require compliance with the provision under these circumstances would be an idle act. (*Paez v. Mutual Indem. etc. Ins. Co.* (1931) 116 Cal.App. 654, 659 [3 P.2d 69].)

As to the second, Blue Shield cites inapplicable decisions concerning the type of proof required to show that a party either waived or was estopped from relying on certain contract provisions. Blue Shield also relies on Code of Civil Procedure section 360.5, which provides that the statute of limitations may not be waived for longer than four years, and only then by an agreement signed by the waiving party. It is not clear to us that this statute applies to a contract provision that does not waive the statute of limitations, but instead merely purports to fix it for actions arising from the agreement. Assuming for the sake of argument that Code of Civil Procedure section 360.5 does apply in this setting, we conclude that the policy's extended limitations clause complies with that provision because it is in writing and the policy was signed by both the secretary and president of Blue Shield.

■ Finally, Blue Shield relies on the doctrine of *noscitur a sociis*: that a word takes its meaning from the company it keeps. (*Credit Suisse First Boston Mortgage Capital, LLC v. Danning, Gill, Diamond & Kollitz* (2009) 178 Cal.App.4th 1290, 1298, fn. 6 [101 Cal.Rptr.3d 192].) Under this principle, courts will adopt a restrictive meaning of a listed item if acceptance of a broader meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 307 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) The doctrine is not applicable to terms that are set apart in different clauses for apparent disparate treatment. (*Texas Commerce Bank v. Garamendi* (1992) 11 Cal.App.4th 460, 473 [14 Cal.Rptr.2d 854].) Furthermore, the doctrine is a mere aid, and is not to be followed when a provision is not amenable to its application. (*Id.* at p. 472.) With these rules in mind, we hold the doctrine inapplicable here. The phrase "any other matter arising out of this Plan" cannot reasonably be read as part of the preceding, more limited class of damages related to benefits or coverage. Instead, its commonsense meaning is that anything connected to the policy, including benefits and coverage, is included within the limitation provision.

■ In short, instead of using the language set forth in section 10350.11, Blue Shield drafted a policy provision that a reasonable insured would read as providing a three-year time limit to sue for any matters arising out of the policy, regardless of the nature of the remedies sought.

## DISPOSITION

The petition is denied. Real party in interest shall recover her appellate costs.

Flier, J., and Grimes, J., concurred.