Filed 12/11/23; Certified for Publication 1/8/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NICOLE DEMARINIS et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>HERITAGE BANK OF COMMERCE,<br><br>    Defendant and Appellant. | A167091<br><br>(Alameda County<br>Super. Ct. No. RG20080970) |

This is a putative class action and representative action brought by plaintiffs Nicole DeMarinis and Kelly Patire under the California Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.) (PAGA) against defendant Heritage Bank of Commerce (Heritage Bank) for wage and hour and other Labor Code violations. Heritage Bank unsuccessfully moved to compel arbitration of plaintiffs' individual PAGA claims pursuant to a "representative" action waiver in the parties' arbitration agreement. Relying principally on *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. ___ [142 S. Ct. 1906] (*Viking River*), Heritage Bank contends the denial of arbitration was erroneous because the waiver provision is not, as the trial court ruled, an unenforceable "wholesale" waiver of plaintiffs' PAGA claims, but instead is an enforceable waiver pertaining only to plaintiffs' "nonindividual" PAGA claims. We reject Heritage Bank's contentions and affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are current and former employees of Heritage Bank. Upon their hiring, plaintiffs purportedly executed a "MUTUAL AGREEMENT TO ARBITRATE CLAIMS" (arbitration agreement) reflecting the parties' "mutual[] consent to the resolution by arbitration of all claims, arising out of my employment (or its termination) that the Company may have against me, or that I may have against the Company." The arbitration agreement covers claims for wages and other compensation, and for violations of any federal, state, or other law, statute, regulation, or ordinance.

A section of the arbitration agreement entitled "Waiver of Right to File Class, Collective, or Representative Actions" (waiver provision) contains two paragraphs. The first paragraph states, in relevant part: "The Company and I may bring claims against the other only in its or my individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding. There shall be no right or authority for any dispute to be brought, heard, or arbitrated on a class, collective, or representative basis and the Arbitrator may not consolidate or join the claims of other persons or Parties who may be similarly situated."

The second paragraph of the waiver provision includes a nonseverability clause stating: "The Company and I acknowledge and agree that the conditions set forth in [the waiver] provision are material terms of this Agreement and may not be modified or severed, in whole or in part. If this specific provision is found to be unenforceable, then the entirety of this Agreement shall be null and void." Plaintiffs refer to this last sentence as a "poison pill," and we do likewise. (See, e.g., *Westmoreland v. Kindercare Education LLC* (2023) 90 Cal.App.5th 967, 972 (*Westmoreland*) [referring to

2

clause invalidating agreement upon unenforceability of waiver as "poison pill"].)

In 2020, plaintiffs filed the instant action against Heritage Bank, asserting nine causes of action for (1) failure to reimburse business-related expenses; (2) failure to provide meal periods; (3) failure to provide rest periods; (4) failure to pay minimum wages; (5) failure to pay overtime compensation; (6) failure to provide accurate itemized wage statements; (7) failure to pay all wages due at separation of employment; (8) violation of the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200); and (9) violation of PAGA.  In the PAGA cause of action, plaintiffs allege they are "aggrieved employees" as defined in Labor Code section 2699, subdivision (a), and bring the PAGA action on behalf of the State of California with respect to themselves and all persons employed by Heritage Bank in California during the relevant time period.

In 2022, the United States Supreme Court issued its much-anticipated decision in *Viking River*, which held the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) preempts the ruling of *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*) "insofar as [*Iskanian*] precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate."  (*Viking River*, *supra*, 569 U.S. at p. ___ [142 S. Ct. at p. 1924].)

Relying on *Viking River*, Heritage Bank moved to compel arbitration of plaintiffs' "individual claims (including individual PAGA claims)" and to dismiss "any class or non-individual PAGA claims."  The trial court denied the motion.  Observing that the waiver provision includes an improper waiver of the right of employees to bring "an action in court as proxy or agent of the LWDA und[er] the PAGA," and that the nonseverability clause and poison

3

pill preclude severance of that unenforceable waiver, the court determined the entire agreement to arbitrate is null and void and provides no basis for compelling arbitration of plaintiffs' individual PAGA claims. This timely appeal followed.

## DISCUSSION

### I. Governing Law

#### A. *Standard of Review*

This case requires that we focus on the language of the parties' arbitration agreement as it relates to plaintiffs' PAGA claims, not their individual causes of action directly under the Labor Code and the UCL.

"In evaluating an order denying a motion to compel arbitration, ' " 'we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law.' " ' " (*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1106.)

#### B. *FAA Preemption*

Under the FAA and California law, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2; *OTO, LLC v. Kho* (2019) 8 Cal.5th 111, 125.) Section 2 of the FAA reflects "both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.' " (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339 (*Concepcion*), internal citations omitted.)

Although the FAA "preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." (*Concepcion, supra,* 563 U.S. at p. 343.) In *Concepcion*, the United States Supreme Court held

4

the FAA preempts California's *Discover Bank* rule that class action waivers in adhesive consumer arbitration agreements are unconscionable under California law. As *Concepcion* explained, to the extent class arbitration is compelled through the *Discover Bank* rule rather than the consent of the contracting parties, the rule interferes with fundamental attributes of arbitration. Specifically, class arbitration sacrifices the informality and efficiency of arbitration; increases risks to defendants; and is poorly suited to the higher stakes of class litigation due to the lack of multilayered review. (*Concepcion*, at pp. 348–352.)

## C. *PAGA and* Iskanian

PAGA was enacted "to augment the limited enforcement capability of the [Labor and Workforce Development Agency (LWDA)] by empowering employees to enforce the Labor Code as representatives of the [LWDA]." (*Iskanian*, *supra*, 59 Cal.4th at p. 383.) The statute "deputizes an 'aggrieved' employee to bring a lawsuit 'on behalf of himself or herself and other current or former employees' to recover civil penalties for Labor Code violations that would otherwise be assessed and collected by the state. . . . Although an aggrieved employee is the named plaintiff in a PAGA action, an employee suing under PAGA ' "does so as the proxy or agent of the state's labor law enforcement agencies." ' [Citations.] Thus, '[e]very PAGA claim is "a dispute between an employer and the state." ' " (*Seifu v. Lyft, Inc.* (2023) 89 Cal.App.5th 1129, 1137 (*Seifu*).)

In *Iskanian,* the California Supreme Court held that an "arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions *in any forum* is contrary to public policy" because such an agreement seeks to exempt employers from responsibility for their legal violations and violates the statutory rule that " 'a

5

law established for a public reason cannot be contravened by a private agreement.' " (*Iskanian, supra*, 59 Cal.4th at pp. 360, 383, italics added.) The court emphasized that public policy prohibits such agreements "whether or not an individual claim is permissible under the PAGA" because " 'a single-claimant arbitration under the PAGA for individual penalties will not result in the penalties contemplated under the PAGA to punish and deter employer practices that violate the rights of numerous employees under the Labor Code.' " (*Iskanian*, at p. 384.)

*Iskanian* further held its rule was not preempted by the FAA because a PAGA action is not a private dispute, but "a dispute between an employer and the state [LWDA]." (*Iskanian, supra*, 59 Cal.4th at p. 384.) As such, a prohibition against PAGA waivers "does not interfere with the FAA's goal of promoting arbitration as a forum for private dispute resolution." (*Iskanian*, at pp. 388–389.)

In light of *Iskanian*, "various courts held that employers may not require employees to 'split' PAGA actions in a manner that puts individual and non-individual components of a PAGA claim into bifurcated proceedings" between arbitral and judicial forums. (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1118 (*Adolph*), citing *Perez v. U-Haul Co. of California* (2016) 3 Cal.App.5th 408 and *Williams v. Superior Court* (2015) 237 Cal.App.4th 642.)

### D. Viking River

In *Viking River*, the United States Supreme Court held the FAA preempts the rule of *Iskanian* "insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Viking River, supra*, 596 U.S. at p. ___ [142 S. Ct. at p. 1924].) Central to the court's holding was its view of the distinction between

6

"individual" and "non-individual" facets of a "representative" PAGA action, which merits a detailed discussion.

As the *Viking River* court explained, PAGA "tends to use the word 'representative' in two distinct ways. . . . [¶] In the first sense, PAGA actions are 'representative' in that they are brought by employees acting as representatives—that is, agents or proxies—of the State." (*Viking River*, 596 U.S. at p. ___ [142 S. Ct. at p. 1916].) In this sense, " ' "*every* PAGA action is . . . representative" ' and '[t]here is no individual component to a PAGA action.' " (*Viking River*, at p. ___ [142 S. Ct. at p. 1916].)

But PAGA also "contain[s] what is effectively a rule of claim joinder" that allows aggrieved employees to " 'seek any civil penalties the state can, including penalties for violations involving employees other than the PAGA litigant herself.' " (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S. Ct. at p. 1915].) *Viking River* distinguished such "non-individual" PAGA claims arising out of events involving other employees from " 'individual' " PAGA claims premised on Labor Code violations actually sustained by the plaintiff. (*Viking River*, at p. ___ [142 S. Ct. at p. 1916].)

Based on this distinction, *Viking River* held the FAA does not preempt *Iskanian's* "principal" rule prohibiting waivers of "representative" PAGA claims "in the first sense" (that *every* PAGA action is representative) because a PAGA action, which involves a single principal—the LWDA—is structurally different from class actions and therefore does "not present the problems of notice, due process, and adequacy of representation that render class arbitration inconsistent with arbitration's traditionally individualized form." (*Viking River*, *supra*, 569 U.S. at p. ___ [142 S. Ct. at pp. 1916–1917, 1921].)

However, *Viking River* found preemption of *Iskanian's* secondary rule prohibiting parties from contracting around PAGA's claim joinder mechanism

because the rule interfered with the employer's ability to enforce arbitration as to just the individual PAGA claim. (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S. Ct. at p. 1923].) As the court explained, "state law cannot condition the enforceability of an arbitration agreement on the availability of a procedural mechanism that would permit a party to expand the scope of the arbitration by introducing claims that the parties did not jointly agree to arbitrate." (*Id.* at pp. 1923–1924.) "The effect of *Iskanian's* rule mandating this mechanism is to coerce parties into withholding PAGA claims from arbitration. . . . This result is incompatible with the FAA." (*Viking River*, 596 U.S. at p. ___ [142 S. Ct. at p. 1924].)

Of significant note, the arbitration agreement in *Viking River* contained "a severability clause specifying that if the waiver was found invalid, any class, collective, representative, or PAGA action would presumptively be litigated in court. But under that severability clause, if any 'portion' of the waiver remained valid, it would be 'enforced in arbitration.' " (*Viking River*, 596 U.S. at p. ___ [142 S. Ct. at p. 1916].) The court interpreted this clause as permitting the employer to enforce arbitration of just the individual PAGA claim. (*Viking River*, 596 U.S. at p. ___ [142 S. Ct. at p. 1917].) And because *Iskanian's* rule of indivisibility interfered with the employer's ability to do so, it was preempted by the FAA.[1]

---

[1] As we understand *Viking River*, enforcement of an arbitration agreement as to a severable "individual" PAGA claim is permissible notwithstanding that the claim is still "representative" in the "first sense" of PAGA because the *substantive* right (to seek civil penalties for Labor Code violations as an agent or proxy of the state) has not been altered or abridged; all that has changed is "how those rights will be processed," namely, the forum in which the right must be litigated. (*Viking River*, *supra*, 569 U.S. at p. ___ [142 S. Ct. at p. 1919].) But most employers will not agree to arbitration of nonindividual PAGA claims, as "[a]rbitration is poorly suited to the higher stakes' of massive-scale disputes of this kind," and because a state

In the final section of its opinion, *Viking River* reiterated its holding that an employee's nonindividual PAGA claims "may not be dismissed simply because they are 'representative.' *Iskanian's* rule remains valid to that extent." (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S. Ct. at p. 1925].) However, in the *Viking River* court's view, enforcing arbitration as to the plaintiff's individual PAGA claim resulted in a loss of standing to maintain her nonindividual PAGA claims in court. "When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit. [Citation.] As a result, [the plaintiff] lacks statutory standing to continue to maintain her non-individual claims in court, and the correct course is to dismiss her remaining claims." (*Viking River*, at p. ___ [142 S. Ct. at p. 1925].)

In a concurring opinion, Justice Sotomayor explained that *Viking River's* standing analysis was "based on available guidance from California courts," and that "if this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word." (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S. Ct. at p. 1925] (conc. opn. of Sotomayor, J.).)[2]

---

law mechanism that mandates mass arbitration "radically expands the scope of PAGA actions," it "effectively coerces" employers to opt for a judicial forum, contravening the fundamental principle of the FAA that arbitration is a matter of consent. (*Viking River*, at p. ___ [142 S. Ct. at pp. 1915,1924].)

[2] In the wake of *Viking River*, several California appellate courts declined to follow *Viking River's* interpretation of PAGA on the issue of standing after an individual PAGA claim has been ordered to arbitration. (See *Seifu*, *supra*, 89 Cal.App.5th at pp. 1139, 1141; *Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, 1292–1293 (*Piplack*); *Galarsa v. Dolgen California, LLC* (2023) 88 Cal.App.5th 639, 652–653 (*Galarsa*).) Standing is not at issue in this appeal.

9

### E. Adolph

The last word came just over a year later when the California Supreme Court held in *Adolph* that an aggrieved employee who was compelled to arbitrate his individual PAGA claim nonetheless maintained standing to pursue his nonindividual PAGA claims in court. (*Adolph*, *supra*, 14 Cal.5th p. 1114.) The court explained that a plaintiff obtains standing as an "aggrieved employee" for PAGA purposes "upon sustaining a Labor Code violation committed by his or her employer." (*Adolph*, at p. 1120.) Once obtained, PAGA standing "is not affected by enforcement of an agreement to adjudicate a plaintiff's individual claim in another forum," as this "does not nullify the fact of the violation or extinguish the plaintiff's status as an aggrieved employee." (*Adolph*, at p. 1121.) In so concluding, the *Adolph* court emphasized it was not bound by *Viking River's* interpretation of California law. (*Adolph*, at p. 1119.)

### II.  Analysis

Against this backdrop, we turn to the arbitration agreement in question. The waiver provision reflects the parties' agreement to waive their rights to bring any claims against one other "in *any* purported class or *representative* proceeding. There shall be *no* right or authority for *any* dispute to be *brought, heard,* or *arbitrated* on a class, collective, or *representative* basis and the Arbitrator may not consolidate or join the claims of other persons or Parties who may be similarly situated." (Emphasis added.) We conclude this provision is unenforceable under *Iskanian's* principal rule, which "*Viking River* left undisturbed" (*Adolph*, *supra*, 14 Cal.5th at p. 1117), because it requires plaintiffs to waive their right to bring any "representative" PAGA claim "in any forum," arbitral or judicial (see *Iskanian*, *supra*, 59 Cal.4th at pp. 360, 383).

Heritage Bank insists, however, that in light of *Viking River's* distinction between individual and nonindividual PAGA claims, "any state rule that prohibits a party from waiving the right to bring non-individual claims is preempted by the FAA." This is incorrect. *Viking River* did not hold the FAA preempts a state law rule that prohibits the waiver of nonindividual PAGA claims. To the contrary, *Viking River* left intact *Iskanian's* principal rule prohibiting employers from imposing a waiver of an employee's right to bring a "representative" PAGA claim in any forum, either in its individual or nonindividual sense. (*Viking River*, *supra*, 569 U.S. at p. ___ [142 S. Ct. at p. 1925] [*Iskanian's* rule that PAGA "claims may not be dismissed simply because they are 'representative' . . . remains valid to that extent"].) Rather, the portion of *Iskanian* that *Viking River* abrogated was its rule of indivisibility that effectively coerces employers either to submit to a mass arbitration of individual and nonindividual PAGA claims, or to forgo arbitration completely. (*Viking River*, at p. ___ [142 S. Ct. at p. 1924].) Nothing in *Viking River* suggests that employers may require employees to completely forgo their rights to bring nonindividual PAGA claims as a condition of employment.

Moreover, *Adolph* recognizes that an individual PAGA claim in a case may proceed to arbitration, while nonindividual PAGA claims in the matter remain in court. (*Adolph*, *supra*, 14 Cal.5th at p. 1123; see, e.g., *Piplack supra* 88 Cal.App.5th at p. 1289.) Thus, parties remain free to utilize the informal and expedient procedures of arbitration for an individual PAGA claim, without forsaking the advantages of a judicial forum (e.g., procedural rigor, multilayered review) for the nonindividual PAGA claims. (See *Viking River*, *supra*, 569 U.S. at p. ___ [142 S. Ct. at p. 1924].)

11

To facilitate this, employers are free to draft a severability clause like the one that *Viking River* interpreted in conjunction with the PAGA waiver to permit arbitration of just the individual PAGA claim. (*Viking River*, 596 U.S. at p. ___ [142 S. Ct. at p. 1917].) But here, Heritage Bank did not do so; instead, it used an arbitration agreement containing a nonseverability clause and a poison pill which together specified that all conditions in the waiver provision are material and may not be modified or severed, either "in whole or in part," and that if the waiver provision is found unenforceable, then "the entirety" of the arbitration agreement is "null and void." As the trial court aptly observed, these provisions preclude "giv[ing] effect to the *Viking River* distinction between 'individual' and 'non-individual' claims" because they prohibit severance of the unenforceable nonindividual PAGA claims waiver. And because the waiver provision's terms cannot be severed in any way, application of *Iskanian*'s principal rule renders the entire waiver provision unenforceable, which in turn renders void the entire arbitration agreement.

Our colleagues in Division Two reached a similar conclusion in *Westmoreland*. There, as here, the arbitration agreement included a waiver of "class, collective, or representative" claims, as well as a poison pill stating in relevant part that " 'if the Waiver of Class and Collective Claims is found to be unenforceable, then this agreement is invalid and any claim brought on a class, collective, or representative action must be filed in a court of competent jurisdiction.' " (*Westmoreland, supra*, 90 Cal.App.5th. at p. 972.) As *Westmoreland* observed, "Had Kindercare simply included a waiver of representative claims in its arbitration agreement and not included the poison pill at the end of the agreement, the result here could have been substantially similar to that in *Viking River*" and other California decisions following *Viking River*. (*Westmoreland*, at p. 982, citing *Vaughn v. Tesla*

12

(2023) 87 Cal.App.5th 208, *Piplack*, *supra*, 88 Cal.App.5th 1281, and *Galarsa*, *supra*, 88 Cal.App.5th 639.) And similar to the conclusion we reach here, *Westmoreland* ruled the poison pill unambiguously "leaves no room for Kindercare to choose to bifurcate Westmoreland's claims between arbitration and court; it instead invalidates the agreement." (*Ibid*.)

*Westmoreland* also found it "[i]ronic" that the poison pill utilized by Kindercare "necessitates a result similar to the 'claim joinder' rule in PAGA that *Viking River* deemed problematic when imposed by state law." (*Westmoreland*, *supra*, 90 Cal.App.5th at p. 982.) This underscores why Heritage Bank's preemption argument carries no force. Because it is the contractual nonseverability and poison pill provisions, not the secondary rule of *Iskanian* or any other state law rule, that prevent plaintiffs' individual and nonindividual PAGA claims from being divided between different forums, the indivisibility is consensual, not coerced, and the federal preemption precedents therefore have no application. Indeed, it would contravene the FAA *not* to enforce the nonseverability of the agreed waiver provision according to its express terms. (See *Concepcion*, *supra*, 563 U.S. at p. 339 [FAA embodies fundamental principle that arbitration is matter of contract].)

Finally, Heritage Bank argues the waiver provision should be construed not as a so-called "wholesale" waiver of plaintiffs' PAGA claims in violation of *Iskanian*, but instead more narrowly as an enforceable waiver of *only* the nonindividual PAGA claims. As we understand this argument, Heritage Bank believes an unenforceable wholesale PAGA waiver is one that waives *both* individual *and* nonindividual claims, and thus, *Iskanian's* principal rule (as well as the effect of the poison pill) may be avoided if we interpret the waiver provision as waiving *only* nonindividual PAGA claims. This argument fails for two reasons. First, it rests on a misapprehension of

13

what *Iskanian* means by a wholesale PAGA waiver. Second, and in any event, Heritage Bank's construction of the waiver provision is not reasonable.

To reiterate, an unenforceable wholesale PAGA waiver is one that requires an employee as a condition of employment to waive their right to bring any "representative" PAGA claims, individual or nonindividual, "*in any forum*." (*Iskanian*, *supra*, 59 Cal.4th at p. 360, italics added.) The focus of this determination is whether the waiver requires an employee to forgo a "substantive" right (e.g., to seek civil penalties for Labor Code violations on behalf of the state), as opposed to merely changing "how those rights will be processed" (e.g., in an arbitral forum under arbitral rules). (*Viking River*, *supra*, 569 U.S. at p. ___ [142 S. Ct. at p. 1919].) For the reasons already discussed, the waiver provision here requires plaintiffs to completely abandon their right to bring both individual and nonindividual PAGA claims in any forum, and, for that reason, it is against public policy.

Indeed, even if the individual PAGA claims were expressly subject to arbitration, requiring plaintiffs to completely waive their rights to bring nonindividual PAGA claims in any forum would still constitute a "wholesale" PAGA waiver that violates public policy under *Iskanian*. *Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786 (*Gregg*) illustrates this precise point. There, the challenged PAGA waiver consisted of two distinct clauses, one that waived the plaintiff's right to bring a PAGA action " 'in any court or in arbitration,' " and the other requiring "any claim brought on a private attorney general basis" to be "resolved in arbitration on an individual basis only." (*Gregg*, at p. 797.) Observing that "both clauses make clear that Gregg must completely forgo his statutory right to seek civil penalties for Labor Code violations committed against other employees, whether in court or in arbitration," the court invalidated the waiver provision because it "requires

14

Gregg to do that which is still prohibited by *Iskanian*." (*Gregg*, at p. 797; see also *Seifu*, *supra*, 89 Cal.App.5th at p. 1139 [waiver of right to bring PAGA claims " 'on behalf of others' in 'any court or in arbitration' " constituted unenforceable "wholesale waiver of Seifu's right to bring nonindividual PAGA claims in any forum"].) We agree with *Gregg* and *Seifu* that even after *Viking River*, a complete waiver of the right to bring nonindividual PAGA claims in any forum remains prohibited by *Iskanian*. (See *Viking River*, *supra*, 569 U.S. at p. ___ [142 S. Ct. at p. 1925] [*Iskanian's* rule that nonindividual PAGA claims may not be dismissed simply because they are representative remains valid].)

Finally, even assuming—generously—that *Iskanian*'s prohibition on wholesale PAGA waivers could be avoided by interpreting the waiver provision here as waiving only nonindividual PAGA claims,[3] we would still reject Heritage Bank's construction of the provision.

The express language of the waiver provision here resists a construction that would permit an employee to bring an individual PAGA claim in arbitration. (See Civ. Code, § 1638 [language of contract governs its

---

[3] We acknowledge that certain language in *Viking River* lends itself to Heritage Bank's mistaken view that a PAGA waiver is "wholesale" only when it waives both individual and nonindividual PAGA claims. Specifically, the *Viking River* court stated that due to the severability clause, "the agreement still would have permitted arbitration of [the plaintiff's] individual PAGA claim even if *wholesale* enforcement was impossible." (*Viking River*, *supra*, 569 U.S. at p. ___ [142 S. Ct. at p. 1917], italics added.) As we have explained, however, *Iskanian's* prohibition against wholesale PAGA waivers applies whenever an employee is required to forgo their substantive right to seek civil penalties as an agent or proxy of the state in any forum, either as an individual or nonindividual PAGA claim. (*Iskanian*, *supra*, 59 Cal.4th at p. 360.) Nothing in *Viking River* purports to change *Iskanian's* principal rule in this respect. (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S. Ct. at p. 1925].)

interpretation].)  The provision mandates the employee's agreement to bring claims "only in . . . my individual capacity" and not as a plaintiff in any "representative proceeding."  But " ' "*every* PAGA action is . . . representative" ' " (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S. Ct. at p. 1916]), including individual PAGA claims, which, despite arising from Labor Code violations the plaintiff has personally sustained, are still asserted by the plaintiff as a proxy or agent of the state (see *Iskanian*, *supra*, 59 Cal.4th at p. 380; *Seifu*, *supra*, 89 Cal.App.5th at p. 1137 [every PAGA claim is a dispute between employer and the state]).  As such, a claim brought in the employee's "individual capacity" does not reasonably include a "representative" claim that, by its nature, is brought on behalf of the state. (See *Iskanian*, p. 381 [PAGA penalties recovered on state's behalf are "distinct from" employees' statutory damages "in their individual capacities"].)

Other language in the arbitration agreement reinforces this conclusion. (See *Waller v. Truck Ins. Exchange* (1995) 11 Cal.4th 1, 18 [language in contract must be interpreted as a whole].)  The arbitration provision covers all employment-related claims "that the Company may have against *me*, or that *I* may have against the Company."  (Italics added.)  These first-person references cannot reasonably be construed as permitting an employee to arbitrate PAGA claims, individual or nonindividual, as those claims would belong to the state, not the employee personally.  (See *Seifu*, *supra*, 89 Cal.App.5th at p. 1137 [every PAGA claim is dispute between employer and the state].)

*Viking River* does not compel a different conclusion because it was the severability clause in that case that permitted arbitration of the individual PAGA claim.  (*Viking River*, 596 U.S. at p. ___ [142 S. Ct. at pp. 1916–1917].)

16

But where, as here, severance of any portion of the waiver provision is expressly prohibited, and the remaining contractual language reflects an agreement to arbitrate only the employee's own personal claims, the waiver provision cannot be construed narrowly to waive *only* nonindividual PAGA claims. It necessarily includes waiver of all "representative" claims brought on behalf of the LWDA. Thus, even under Heritage Bank's mistaken view of what constitutes a wholesale PAGA waiver, the provision here still violates public policy.[4]

The principle of *noscitur a sociis* does not assist Heritage Bank. *Noscitur a sociis* means that "a word takes its meaning from the company it keeps. [Citation.] Under this principle, courts will adopt a restrictive meaning of a listed item if acceptance of a broader meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list." (*Blue Shield of California Life & Health Ins. Co. v. Superior Court* (2011) 192 Cal.App.4th 727, 740.) Relying on this canon of construction, Heritage Bank maintains the word "representative" must be interpreted in the context of its surrounding words—e.g., "class" and "collective" actions—to refer to procedures that allow an employee to assert claims "on behalf of other employees." Again, we disagree.

Acceptance of a broader construction of the word "representative" that includes both individual and nonindividual PAGA claims would not make the

_____

[4] To reiterate, at issue here is the contractual language relating to plaintiffs' individual PAGA claims, not their individual causes of action under other sections of the Labor Code and the UCL. But because the entire arbitration agreement is rendered null and void by operation of the poison pill, we need not address Heritage Bank's additional contentions regarding the arbitrability of plaintiffs' non-PAGA claims.

17

other listed items unnecessary or redundant.  To the contrary, an impermissible redundancy occurs if we adopt Heritage Bank's *narrower* construction of "representative" to mean *only* "on behalf of other employees," as this would be superfluous to the notion of a "class" or "collective" action on behalf of other employees.  (See *Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 503 [rules of contractual interpretation require giving force and effect to every provision so as to avoid surplusage].)  Meanwhile, the broader construction of "representative" is not markedly dissimilar to the other items in the list, as they all still generally refer to claims and actions brought on behalf of another (e.g., other employees, the LWDA).

For the foregoing reasons, we conclude the waiver provision in the arbitration agreement constitutes an unenforceable wholesale waiver of plaintiffs' rights to bring "representative" PAGA actions.  Further, by operation of the nonseverability and poison pill clauses, the unenforceability of the waiver provision renders the entire arbitration agreement null and void.  Accordingly, the trial court properly denied the motion to compel.

## DISPOSITION

The trial court's order denying the motion to compel arbitration is affirmed.  Plaintiffs are entitled to their costs on appeal.

18

_____
Fujisaki, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Petrou, J.


*DeMarinis v. Heritage Bank* (A167091)

19

Filed 1/8/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NICOLE DEMARINIS et al.,<br><br>    Plaintiffs and Respondents,<br>v.<br>HERITAGE BANK OF<br>COMMERCE,<br><br>    Defendant and Appellant. | A167091<br><br>(Alameda County<br>Super. Ct. No. RG20080970) |

BY THE COURT:**

The written opinion which was filed on December 11, 2023, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is ordered published in the official reports.

Dated: __1/8/2024_____          ___/s/Tucher, P.J._____
                                                         Presiding Justice

---

** Tucher, P.J., Fujisaki, J., and Petrou, J.

Trial Court:        Alameda County Superior Court

Trial Judge:        Hon. Evelio Grillo

Counsel:            Womble Bond Dickinson (US) LLP, Christopher J. Mead,
                    Edward L. Seidel and Scott M. Mcleod for Defendant
                    and Appellant

                    Torres & Tolman, Benjamin J. Tolman and James J. Torres
                    for Plaintiffs and Respondents

*DeMarinis v. Heritage Bank of Commerce* (A167091)

2